UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

|  |  |
|---|---|
| DERRICK EVANS, | Case No. 1:19-cv-536-HSO-JCG |
| Plaintiff, |  |
| v. |  |
| THE HUFFINGTON POST.COM, INC. and ASHLEY FEINBERG, |  |
| Defendants. |  |

# COMPLAINT
## JURY TRIAL DEMANDED

## NATURE OF THE CASE

This defamation action is brought by Derrick Evans, a teacher and civil rights and environmental justice advocate from Mississippi, against Defendants The Huffington Post.com, Inc. ("HuffPost") and its former journalist, Ashley Feinberg. HuffPost and Feinberg repeatedly defamed Mr. Evans and his friend Douglas Kennedy to a nationwide audience on multiple occasions in September 2018 by falsely asserting that they helped arrange the purchase and delivery of cocaine that resulted in the April 1984 death of David Kennedy, Douglas's brother and the son of the late U.S. Attorney General and Senator Robert F. Kennedy. These statements were not only false and defamatory, but outrageously so, and were published by Defendants with knowledge of their actual falsity or in reckless disregard of the truth for the apparent purpose of creating a salacious story designed to drive internet traffic to HuffPost's website.

More specifically, and as set forth in greater detail below, on September 20, 2018, HuffPost published online Ms. Feinberg's article, which was titled: "Former Student: Brett

Kavanaugh's Prep School Party Scene Was a 'Free-For-All'." In HuffPost's zeal to create a sensational article about Judge Brett Kavanaugh's years at Georgetown Preparatory School ("Georgetown Prep") and thereby drive traffic to its website, it fabricated the false claim that Mr. Kennedy and Mr. Evans, who, like Kavanaugh, are also alumni of Georgetown Prep, "helped score" the illegal narcotics that killed Douglas Kennedy's older brother David in April 1984.

While purporting to quote at length an anonymous former student about the culture of Georgetown Prep during the 1980s, Defendants had no sources to support their outrageously false and defamatory statements about Derrick Evans and Douglas Kennedy. Nor did Defendants make any effort whatsoever to contact Mr. Evans for comment before accusing him of not only of committing a crime, but of being responsible for the death of David Kennedy. Indeed, if Ms. Feinberg or her HuffPost editors had done even the most basic research of publicly available sources, she and they would have known, if they did not already know, that Mr. Evans actively assisted law enforcement in identifying and prosecuting the individuals who <u>actually</u> sold the illegal narcotics.

After Defendants were contacted by representatives of Douglas Kennedy, who informed HuffPost in no uncertain terms that its article was false and defamatory as it related to Mr. Kennedy and Mr. Evans, HuffPost doubled down on its defamatory attack on Mr. Evans' reputation by posting a purported "correction" on September 21, 2018, which read:

> This article previously stated incorrectly that Doug Kennedy was involved in helping his brother to purchase drugs in 1984. Kennedy was only sharing a room with <u>Derrick Evans, who helped David purchase the drugs, according to an affidavit obtained by the New York Times</u>. We regret the error.

(emphasis added).

The September 21 correction was another complete fabrication published by HuffPost with actual knowledge that both it and the original publication were false or in reckless disregard

of the truth, again without ever attempting to contact Mr. Evans for comment. As HuffPost knew, there was NO affidavit reflecting that Mr. Evans ever helped anyone purchase illegal drugs. Defendants had no such affidavit in their possession, and they could not have had such an affidavit in their possession.

Moreover, *The New York Times*, which had extensively reported on David Kennedy's death in 1984, had made it clear in its reporting that far from "helping" David purchase the drugs, Mr. Evans had assisted law enforcement and prosecutors in identifying the individuals who had actually sold the illegal drugs to David Kennedy. See Stuart, Reginald, "3 Drugs are Blamed in David Kennedy Case," N.Y. Times (May 17, 1984) (available at https://www.nytimes.com/1984/05/17/us/3-drugs-are-blamed-in-david-kennedy-case.html).

As a result of Defendants' knowing and reckless publications of outrageously false and defamatory statements, Mr. Evans has suffered significant injury to his reputation and emotional distress, for which he seeks compensatory damages, as well as punitive damages in an amount sufficient to deter such egregious conduct in the future. In support of this Complaint, Derrick Evans alleges the following:

**PARTIES**

1. Plaintiff Derrick Evans is a resident of Gulfport, Harrison County, Mississippi.

2. Defendant TheHuffingtonPost.com, Inc. ("HuffPost") is a Delaware corporation with its headquarters and principal place of business located at 770 Broadway, New York, New York.

3. HuffPost is owned by Verizon Media, LLC, a foreign (Delaware) subsidiary of Verizon Communications, Inc. HuffPost may be served with process through its registered agent

for service of process, CT Corporation System, at 28 Liberty Street, New York, New York 10005.

4. HuffPost operates a global online news and media platform at www.huffpost.com. HuffPost publicly proclaims that its site has over one million users active on it every month.

5. HuffPost declares on its website that it "endeavors to be accurate in its reporting, transparent and thorough in its sourcing, and fair and independent in its analysis. HuffPost strives to verify and corroborate information via multiple sources whenever possible."

6. HuffPost's website also proclaims that it:

> works to correct any misstatements in a timely manner, with a correction note appended to the bottom of an article to indicate what has been fixed and how. More prominent notices may be included for more egregious errors. HuffPost will only retract an article after extensive review by a senior editor has found fundamental flaws in the reporting, and always with an editor's note.

7. Defendant Ashley Feinberg was a senior reporter employed by HuffPost prior to May 2019, and at all times relevant to this action. She is a resident of the State of New York and is currently employed as a senior writer by Slate Magazine, where she may be served with process at 15 MetroTech Center, New York, New York 10003.

8. In a *Columbia Journalism Review* interview, Ms. Feinberg is described as a reporter who "trolls for all the right reasons," and she herself proclaims that "making people mad or uncomfortable is always a best case scenario."

**JURISDICTION & VENUE**

9. Jurisdiction is based upon the complete diversity of citizenship between Plaintiff and Defendants. The amount in controversy exceeds $75,000, exclusive of costs. This Court therefore has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

10. HuffPost has subscribers domiciled in Mississippi and derives revenue from Mississippi based on its operations.

4

11. HuffPost, for a fee, sells premium subscriptions for its website content to Mississippi residents on either a monthly or annual basis. The sale of these premium subscriptions generates revenue and is a vital part of HuffPost's business model.

12. HuffPost also derives revenue from the sale of advertisements on its website, including revenue from Mississippi advertisers. Mississippi visitors to its website thereby cause an increase in advertisement revenue for HuffPost. The development and publication of its news articles, such as the article made the subject of this lawsuit, is an inherent part of HuffPost's business model of selling premium subscriptions to its website to Mississippi residents and further generating visitor traffic from Mississippi residents to its website, thereby increasing HuffPost's advertising revenue.

13. HuffPost is doing business in Mississippi and has entered into contracts with Mississippi residents to be performed in whole or in part in Mississippi, and Defendants committed a tort in whole or in part in this state.

14. Defendants' contacts with the forum state are sufficient to subject them to personal jurisdiction in Mississippi.

15. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district, and Defendants' actions caused injury to Plaintiff in this district.

## FACTS

**Background of Mr. Evans**

16. Mr. Evans is a sixth-generation native of Turkey Creek, coastal Mississippi's historic African-American settlement founded by his ex-slave ancestors in 1866 on the Gulf of Mexico during Reconstruction.

17. Growing up neither wealthy, nor entitled, Mr. Evans was able to obtain a full academic scholarship to Georgetown Preparatory School ("Georgetown Prep") in North Bethesda, Maryland, in 1982. As one of the only black students at Georgetown Prep, Mr. Evans vowed to excel and make positive changes in the world, and he has spent his adult life focusing on disaster relief, environmental causes, cultural issues and preservation, and matters of justice.

18. Mr. Evans was honored by being asked to return to Georgetown Prep in 2017 to speak to students about what "service" means and should mean to them.

19. After earning bachelors and masters degrees in History, Education, and African-America Studies from Boston College, Mr. Evans became a history professor and lecturer on American social history and the Civil Rights Movement. In 1992, he was awarded Harvard and Radcliffe Colleges' "Certificate of Distinction in Teaching."

20. In 1997, Mr. Evans co-founded the acclaimed and nationally emulated Epiphany School, a full-service and tuition-free independent middle school for low-income children and families in Boston.

21. In 2003, Mr. Evans founded Turkey Creek Community Initiatives, a Mississippi nonprofit for resisting and creatively reversing cultural erosion, wetlands destruction, and government neglect in his community.

22. In 2005, in the direct wake of Hurricane Katrina, Mr. Evans co-founded the Gulf Coast Fund for Community Renewal and Ecological Health, which has directed over $5 million in critical funding to groups in coastal Louisiana, Mississippi, Alabama, Texas and Florida. He was asked to co-develop and lead this initial special project of Rockefeller Philanthropy Advisors due to his grasp of the financial and technical needs of groups pursuing recovery and social justice in the wake of natural disasters.

23. Mr. Evans has been honored as a "Preservation Hero" by the Mississippi Heritage Trust. He was awarded the 2006 Frank L. Parker "Client of the Year" Award by the Lawyers Committee for Civil Rights. He also received the Jane Bagley Lehman Prize for Excellence in Public Advocacy from the Tides Foundation.

**The Initial Defamation: The September 20, 2018 Article**

24. HuffPost hired Ms. Feinberg in approximately October 2017 as a senior reporter.

25. Ms. Feinberg left HuffPost's employment in approximately May 2019.

26. While employed by HuffPost, Ms. Feinberg's duties and responsibilities focused on writing new stories and other online content.

27. Ms. Feinberg has a well-earned reputation for publishing stories designed to "light up the internet."

28. In the fall of 2018, the United States Senate was holding confirmation hearings on the Supreme Court nomination of Justice (then Judge) Brett Kavanaugh, who like Mr. Evans and his friend Douglas Kennedy, is an alumnus of Georgetown Prep.

29. During the controversy surrounding Justice Kavanaugh's nomination, Ms. Feinberg reported and wrote, and HuffPost published, a sensational article depicting a wild "alcohol-and-drug-fueled" culture at Georgetown Prep in the early 1980s.

30. More specifically, on September 20, 2018, HuffPost published on its website Ms. Feinberg's article entitled: "Former Student: Brett Kavanaugh's Prep School Party Scene Was a 'Free-For-All'" ("the Original Defamatory Article").

31. A true and correct copy of the Original Defamatory Article is attached hereto and incorporated herein as Exhibit 1.

7

32. In HuffPost and Feinberg's zeal to embellish a salacious article about Justice Kavanaugh's years at Georgetown Prep and to capitalize upon the controversy surrounding his confirmation hearing and thereby drive traffic to its website, they fabricated the false claim that Douglas Kennedy and Derrick Evans "helped score" the illegal narcotics that killed Douglas's older brother David in April 1984.

33. More specifically, Ms. Feinberg wrote and HuffPost published:

> The [anonymous] former student spoke of Kennedy's death as the end of the school's free-for-all party scene and the catalyst for changes in Georgetown Prep culture. Two students – David's brother Doug, and his friend Derrick Evans – had helped score the coke.

*See* Exhibit 1.

34. The statement that "Two students - David's brother Doug and his friend Derrick Evans - had helped score the coke," is false.

35. Defendants' quoted statements about Mr. Evans and Mr. Kennedy constituted libel *per se* as they not only accused Mr. Evans and Mr. Kennedy of committing a crime, namely the purchase and distribution of illegal narcotics, they also asserted that they were thereby responsible for the death of David Kennedy.

36. In addition to being defamatory *per se*, Defendants' statements were knowingly, recklessly and outrageously false. They also were published maliciously and in bad faith.

37. Neither Mr. Evans nor Mr. Kennedy had helped purchase, or to use Ms. Feinberg's word, "score," any cocaine for David Kennedy.

38. In addition, despite purporting to quote an anonymous former student about David Kennedy's death, Feinberg in fact had no source informing her that Mr. Evans purchased drugs for Mr. Kennedy or anyone else.

8

39. Ms. Feinberg fabricated the false story that Mr. Evans helped "score" the cocaine for David Kennedy that resulted in his death.

40. The fabricated statement that two Georgetown Prep students "helped score the coke" that resulted in the death of David Kennedy, who had not attended Georgetown Prep, lent the "Kennedy" name to the article and supported Defendants' narrative that during the time Brett Kavanaugh was a student at Georgetown Prep the school had a drug-and-alcohol-fueled culture.

41. The Original Defamatory Article included the search tags "Robert F. Kennedy" and "Ethel Kennedy" in order to increase dissemination of the article.

42. Many of the other statements in the article concerning the culture of Georgetown Prep in the 1980s, and particularly those concerning parties hosted by Douglas Kennedy, were demonstrably false.

43. Had Ms. Feinberg or her editors at HuffPost undertaken even the most basic internet search of publicly available articles concerning the investigation into David Kennedy's death, they would have learned, if they did not already know, that Mr. Evans actively assisted law enforcement in identifying and prosecuting the individuals who <u>actually</u> sold the illegal narcotics to David Kennedy.

44. Neither Ms. Feinberg nor her editors at HuffPost made any attempt to contact Douglas Kennedy for comment before the Original Defamatory Article was published.

45. Neither Ms. Feinberg nor her editors at HuffPost made any attempt to contact Derrick Evans for comment before the Original Defamatory Article was published.

46. Upon information and belief, Ms. Feinberg and HuffPost chose not to speak with Derrick Evans, Douglas Kennedy or informed members of law enforcement about the circumstances surrounding David Kennedy's death before publication of the Original

Defamatory Article because they knew that such individuals with knowledge of the actual facts would expose the falsity of their narrative.

47. As part of the defendants' efforts to disseminate the article to the broadest possible audience, HuffPost aggressively published its false and defamatory statements on the internet and further promoted the story on social media.

48. As part of this effort, Ms. Feinberg tweeted a link to the Original Defamatory Article from her personal Twitter account, which resulted in hundreds of re-tweets.

**HuffPost's Defamatory "Correction" Further Defamed Mr. Evans After Being Informed That Its Article Was False**

49. On Friday, September 21, 2018, an officer of Fox News, where Douglas Kennedy works as a reporter, contacted HuffPost on Mr. Kennedy's behalf, informed it in no uncertain terms that its article was false and defamatory, and had obviously been published without any fact-checking whatsoever.

50. The Fox News officer told HuffPost that the Original Defamatory Article was so deficient it should be removed in its entirety from HuffPost's website.

51. Instead of pulling down the offending article, HuffPost doubled down on its defamatory campaign against Mr. Evans by posting a purported "correction" at 6:19 p.m. on September 21, 2018, which declared:

> This article previously stated incorrectly that Doug Kennedy was involved in helping his brother to purchase drugs in 1984. Kennedy was only sharing a room with <u>Derrick Evans, who helped David purchase the drugs, according to an affidavit obtained by the New York Times</u>. We regret the error.

("the Defamatory Correction") (emphasis added).

52. A true and correct copy of the Defamatory Correction published by Defendants on September 21, 2018, is attached hereto and incorporated herein as Exhibit 2.

10

53. Despite having been informed by Mr. Kennedy's representatives that their original statements about how David Kennedy acquired the cocaine were false, Defendants did not contact Mr. Evans for comment before publishing the falsehood that Derrick Evans "helped David purchase the drugs."

54. The quoted statement about Mr. Evans in the Defamatory Correction is false.

55. Defendants knew the quoted statement about Mr. Evans in the Defamatory Correction was false when it was published.

56. HuffPost and Ms. Feinberg knew that there was no affidavit "obtained by the New York Times" reflecting that Mr. Evans helped David Kennedy purchase illegal drugs, and that Defendants had no such affidavit in their possession.

57. Prior to publication of the Defamatory Correction, neither Ms. Feinberg nor her editors at HuffPost ever read or saw the affidavit referenced in the Defamatory Correction.

58. HuffPost does not have in its possession a copy of the affidavit referenced in the Defamatory Correction.

59. Upon information and belief, Defendants never spoke to anyone at *The New York Times*, nor did they actually read any previous reporting by *The New York Times* about the investigation into David Kennedy's death, prior to publishing either the Original Defamatory Article or the Defamatory Correction.

60. Indeed, *The New York Times*, which had previously reported on David Kennedy's death, had made it clear that far from "helping" David purchase the drugs, Mr. Evans had assisted law enforcement and prosecutors in identifying the individuals who had actually sold the illegal drugs. See Stuart, Reginald, "3 Drugs are Blamed in David Kennedy Case," N.Y. Times

(May 17, 1984) (available at https://www.nytimes.com/1984/05/17/us/3-drugs-are-blamed-in-david-kennedy-case.html).

61. More specifically, in the referenced article, *The New York Times* made it clear that:

- Peter Andrew Merchant of Warwick, RI and Lindwood Dorr of West Yarmouth, MA were arrested for selling the illegal drugs to David Kennedy;

- "Investigators…determined that David Kennedy probably obtained some or all of the high-grade cocaine he used on his final visit here through the two men arrested."

- "Much of the information in the state's affidavit linking Mr. Kennedy to the two men arrested today appeared to rely on statements obtained from Derrick Evans, a prep school classmate of Douglas Kennedy, a younger brother of David….Mr. Evans was staying with Douglas Kennedy at the Brazilian Court in a room separate from David Kennedy.

- "The affidavit said the two men arrested today met David Kennedy at the Brazilian Court on or about April 20 and were asked by him to obtain some cocaine for him. The affidavit said Derrick Evans <u>was present</u> when the purchase of cocaine was discussed."

62. *The New York Times* has <u>never</u> reported that it had obtained an affidavit stating that Mr. Evans "helped" to procure illegal drugs for David Kennedy.

63. Despite having been informed both by telephone and in writing on September 21, 2018, that the Original Defamatory Article was false, and after being pointedly criticized by Mr. Kennedy's representatives for having published without first seeking comment from "those named in the piece," Defendants nevertheless again chose not to contact Mr. Evans before publishing the Defamatory Correction.

64. Defendants chose not to contact Mr. Evans prior to publishing the Defamatory Correction because they knew he would expose their fabrication that an affidavit existed demonstrating that a Georgetown Prep student had "helped purchase the drugs" that resulted in

David Kennedy's death, and thereby destroy any purported nexus between David Kennedy's death and Brett Kavanaugh's Supreme Court nomination.

65. Similarly, Defendants chose not to contact members of the Palm Beach County Sheriff's Department or other law enforcement community to discuss David Kennedy's death and the resulting investigation despite being told that the Original Defamatory Article was false, precisely because they knew that members of law enforcement would expose their fabrications.

66. Like the Original Defamatory Article, the republished story including the Defamatory Correction also contained the search tags "Robert F. Kennedy" and "Ethel Kennedy" in order to increase dissemination of the article.

67. HuffPost and Ms. Feinberg intentionally published a defamatory statement concerning Derrick Evans that they knew to be false or, at a minimum, they willfully and recklessly disregarded known evidence that their purported "correction" was false.

68. Defendants further published the Defamatory Correction maliciously and in bad faith.

**HuffPost Continues In Its Refusal To Post An Actual And Unequivocal Retraction**

69. Not satisfied by the publication of Defendants' Defamatory Correction, Douglas Kennedy retained legal counsel, who contacted HuffPost and Feinberg by letter dated September 22, 2018, demanding a full retraction and other redress.

70. In the September 22 letter, HuffPost was again informed that its statements about Mr. Evans were <u>false</u> and that its conduct was reprehensible:

> You placed into the public sphere an outrageously false claim that Mr. Kennedy supplied the illegal narcotics that killed his older brother David, and then followed your shameful lie with an insincere, incorrect "apology" that placed blame on Mr. Kennedy's friend [Mr. Evans].

13

71. Rather than issuing a full retraction and actual apology to Mr. Evans, Defendants "updated" the subject article on September 24, 2018, by removing all references in the online article to Messrs. Kennedy and Evans, but only after having promoted the Original Defamatory Article on social media and on the internet.

72. The sanitized version of the subject article omitting any reference to Derrick Evans, Douglas Kennedy, David Kennedy and the Kennedy family included a disingenuous and misleading "correction," which stated:

> This article previously mischaracterized the involvement of individuals in a drug purchase. References to those individuals and the incident have been removed. We regret the error.

73. The sanitized version of the subject article published on September 24, 2018, also deleted the search tags "Robert F. Kennedy" and "Ethel Kennedy."

74. A true and correct copy of the sanitized version of the subject article published by Defendants on September 24, 2018, is attached hereto and incorporated herein as Exhibit 3.

75. This second attempt at a "correction" by HuffPost continued its pattern of public deception.

76. The Original Defamatory Article and the Defamatory Correction did not "mischaracterize the involvement of individuals in a drug purchase" because neither Douglas Kennedy nor Derrick Evans had been involved in a drug purchase.

77. Defendants' second purported "correction" was made maliciously and in bad faith.

78. Despite HuffPost's professed commitment "to be accurate in its reporting, transparent and thorough in its sourcing, and fair and independent in its analysis . . . [and to] strive[] to verify and corroborate information via multiple sources whenever possible,"

14

Defendants wholly failed to meet every single one of those standards in their treatment of Derrick Evans.

**Mr. Evans Demands A Proper Retraction of The Defendants' False And Defamatory Statements, Including Those Published Through Social Media**

79. On May 3, 2019, Mr. Evans, through counsel, wrote HuffPost and Ms. Feinberg demanding a written apology and a public retraction of all of HuffPost's and Ms. Feinberg's prior defamatory statements, including those published through social media given that the defendants had actively disseminated the original online article through social media, including through Twitter.

80. Plaintiff's May 3, 2019 retraction demand complies with the requirements of MISS. CODE ANN. § 95-1-5.

81. Defendants have failed and refused to issue Mr. Evans either an apology or a proper retraction of their prior false and defamatory statements about him, including those disseminated through social media.

**COUNT I – DEFAMATION (LIBEL)**

82. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 82 and further alleges as follows.

83. Defendants published to third parties statements of purported fact of and concerning Plaintiff that asserted directly that he "helped score" illegal narcotics that resulted in the death of David Kennedy.

84. Defendants' statements regarding Plaintiff are false.

85. Defendants' statements have a defamatory effect and constitute libel *per se* as they accuse Plaintiff of engaging in criminal activity.

15

86. Defendants' statements were false, malicious and fabricated, and were published with a knowing, intentional, subjective awareness of, and/or reckless disregard of, their falsity.

87. Plaintiff has suffered damages as a result of Defendants' statements, including emotional distress and harm to his reputation.

**COUNT II – PUNITIVE DAMAGES**

88. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 88 and further alleges as follows.

89. Defendants' actions and omissions described above were intentional, willful, reckless, malicious and/or grossly negligent, demonstrating a conscious disregard for the rights and reputation of Plaintiff, and entitling him to an award of punitive damages in an amount sufficient to deter Defendants and others from such conduct in the future.

90. An award of punitive damages against Defendants or either of them will entitle Plaintiff to recover the attorney fees he has incurred and is continuing to incur in the prosecution of this action.

WHEREFORE, Plaintiff requests that after due proceedings are had, this Honorable Court enter a judgment in favor of Plaintiff and against Defendants for damages, pre-judgment and post-judgment interest, costs, punitive damages and attorney fees, and granting such other further relief that this Court deems just and proper.

THIS 21st day of August, 2019.

                              DERRICK EVANS

                              By his attorneys,

                              *s/John P. Sneed*
                              John P. Sneed, Bar No. 7652
                              Charles E. Cowan, Bar No. 104478
                              WISE CARTER CHILD & CARAWAY, P.A.
                              600 Heritage Building
                              401 East Capitol Street
                              Jackson, Mississippi 32901
                              Telephone: (601) 968-5500
                              Email: jps@wisecarter.com