**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

DERRICK EVANS,

        *Plaintiff,*

      v.

THE HUFFINGTONPOST.COM, INC. and
ASHLEY FEINBERG,

        *Defendants.*

Civil Action No.: 1:19-CV-00536-HSO-JSG

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND FACTS ................................................................................................ 2

LEGAL STANDARD ...................................................................................................... 5

ARGUMENT ................................................................................................................... 5

I.  HUFFPOST IS NOT SUBJECT TO GENERAL JURISDICTION IN
    MISSISSIPPI ................................................................................................... 5

II. DEFENDANTS ARE NOT SUBJECT TO SPECIFIC PERSONAL
    JURISDICTION IN MISSISSIPPI .................................................................. 7

III. EXERCISING PERSONAL JURISDICTION OVER DEFENDANTS WOULD
     VIOLATE THE DUE PROCESS CLAUSE ................................................... 11

    A.  HuffPost.com's Passive Website Cannot Be a Basis to Exercise Personal
        Jurisdiction over Defendants........................................................................ 12

    B.  Under the *Calder* "Effects" Test, the Article Cannot Be a Basis to
        Exercise Personal Jurisdiction over Defendants Because It Was Not
        "Aimed" at Mississippi. ............................................................................... 15

IV. PLAINTIFF'S PUNITIVE DAMAGES CLAIM MUST ALSO BE DISMISSED ......... 18

CONCLUSION .............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Energizer Holdings, Inc.*,
   2013 WL 1791373 (S.D. Miss. Apr. 19, 2013)........................................................18

*Allred v. Moore & Peterson*,
   117 F.3d 278 (5th Cir. 1997), *cert denied*, 522 U.S. 1048 (1998)..........................10

*Applied Food Scis., Inc. v. New Star 21, Inc.*,
   2009 WL 9120113 (W.D. Tex. Jan. 23, 2009) .......................................................13

*Brown v. BobTyler Suzuki, Inc.*,
   2012 WL 293486 (S.D. Miss. Jan. 31, 2012) ..........................................................7

*Calder v. Jones*,
   465 U.S. 783 (1984)...............................................................................................15

*Clemens v. McNamee*,
   615 F.3d 374 (5th Cir. 2010) ........................................................................7, 15, 16

*Cole v. Chevron USA, Inc.*,
   554 F. Supp. 2d 655 (S.D. Miss. 2007)..................................................................18

*CompuServe, Inc. v. Patterson*,
   89 F.3d 1257 (6th Cir. 1996) .................................................................................13

*Cycles, Ltd. v. W.J. Digby, Inc.*,
   889 F.2d 612 (5th Cir. 1989) ...................................................................................5

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014).............................................................................................1, 6

*Dunn v. Yager*,
   58 So. 3d 1171 (Miss. 2011)....................................................................................8

*Fielding v. Hubert Burda Media, Inc.*,
   415 F.3d 419 (5th Cir. 2005) ............................................................................15, 16

*Franklin v. Thompson*,
   722 So. 2d 688 (Miss. 1998)..................................................................................10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)........................................................................................6

*Gross v. Chevrolet Country, Inc.*,
    655 So. 2d 873 (Miss. 1995)........................................................................9

*Handshoe v. Torstar Corp.*,
    2015 WL 8056364 (S.D. Miss. Dec. 4, 2015) ......................................10, 11, 16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)........................................................................................11

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)....................................................................................5, 11

*Internet Doorway, Inc. v. Parks*,
    138 F. Supp. 2d 773 (S.D. Miss. 2001)........................................................10

*ITL Int'l, Inc. v. Constenla, S.A.*,
    669 F.3d 493 (5th Cir. 2012) ........................................................................8

*Kaplan v. Harco Nat. Ins. Co.*,
    716 So.2d 673 (Miss. Ct. App. 1998) ..........................................................18

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984)........................................................................................15

*McDaniel v. Ritter*,
    556 So. 2d 303 (Miss. 1989)........................................................................9

*Medina v. Medina*,
    2001 WL 650466 (5th Cir. May 29, 2001) ..................................................9

*Pervasive Software, Inc. v. Lexware GmbH & Co. KG*,
    688 F.3d 214 (5th Cir. 2012) ........................................................................5

*Pitts v. Ford Motor Co.*,
    127 F. Supp. 3d 676 (S.D. Miss. 2015)................................................5, 10, 12

*Revell v. Lidov*,
    317 F.3d 467 (5th Cir. 2002) .......................................................... *passim*

*Smith v. Temco*,
    252 So. 2d 212 (Miss. 1971)........................................................................10

*Snavely v. Nordskog Elec. Vehicles Marketeer*,
    947 F. Supp. 999 (S.D. Miss. 1995)............................................................9

iii

*Tellus Operating Grp., L.L.C. v. R & D Pipe Co.*,
　377 F. Supp. 2d 604 (S.D. Miss. 2005)..................................................................................11

*Walden v. Fiore*,
　571 U.S. 277 (2014).....................................................................................11, 12, 17

*Whitener v. Pliva, Inc.*,
　606 F. App'x. 762 (5th Cir. 2015) ...........................................................................6

*Yatham v. Young*,
　912 So. 2d 467 (Miss. 2005)....................................................................................8

*Young v. New Haven Advocate*,
　315 F.3d 256 (4th Cir. 2002) .................................................................................17

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
　952 F. Supp. 1119 (W.D. Pa. 1997)...........................................................12, 13, 14

**Statutes**

Miss. Code Ann. § 13-3-57 (2002) ..........................................................................1, 8

**Other Authorities**

Fed. Rule Civ. P. 12(b) ...............................................................................1, 5, 10, 18

TheHuffingtonPost.com, Inc. ("HuffPost") and Ashley Feinberg (collectively, "Defendants"), respectfully submit this Memorandum of Law in support of their motion to dismiss the Complaint (Doc. 1) for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).

## INTRODUCTION

This action does not belong and never should have been brought in Mississippi. Under the Due Process Clause of the U.S. Constitution, neither HuffPost nor Ashley Feinberg is subject to general or specific personal jurisdiction in Mississippi.

As a matter of fundamental due process, courts in Mississippi may not exercise general jurisdiction over non-resident corporations unless they are "at home" in the State. The Supreme Court made clear in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), that, with rare exceptions, corporations are "at home" only in those states in which they are incorporated or maintain their principal place of business. Neither condition applies to HuffPost, a Delaware corporation with headquarters in New York City that is not registered to do business in Mississippi, and has no offices, assets, or employees in Mississippi.

Nor is HuffPost or Feinberg subject to personal jurisdiction under Mississippi's long-arm statute, Miss. Code Ann. § 13-3-57 (2002). The online HuffPost article that is the subject of the libel claim in this case had nothing to do with Mississippi, and was not aimed at readers there. Moreover, there are no facts connecting Defendants' actions in sourcing, writing or publishing the article with Mississippi. Such a complete absence of "minimum contacts" between Defendants and Mississippi with respect to Plaintiff's claim mandates the conclusion that any exercise of specific personal jurisdiction over them would violate the Due Process Clause.

For these reasons, the Court should grant Defendants' motion and dismiss the action for lack of personal jurisdiction.

## BACKGROUND FACTS

Plaintiff Derrick Evans ("Plaintiff" or "Evans") filed this action on August 21, 2019, based on an article published on www.HuffPost.com nearly a year before, on September 20, 2018, entitled "Former Student: Brett Kavanaugh's Prep School Party Scene Was 'Free-For-All'" (the "Article"). (Compl. ¶ 30 & Exs. 1–3.) The principal focus of the Article, which was written by Feinberg, was the early-1980's "party" culture at Georgetown Preparatory School, located in North Bethesda, Maryland, and then attended by now-Supreme Court Justice Brett Kavanaugh. The Article did not refer to, and none of the events described in it took place in, or otherwise concerned the State of Mississippi.

Specifically, Evans complains of a sentence in the Article that referred to him, at the time a friend of Douglas Kennedy (son of the late-Senator Robert F. Kennedy), as having "helped score" cocaine for Douglas's brother, David Kennedy, while Evans and the Kennedy brothers were vacationing in Florida. David Kennedy later died of an overdose after mixing cocaine with at least two other narcotic substances. (Compl. ¶¶ 32–34.) In subsequent versions of the Article, the reference to Evans's involvement in the drug purchase was modified and then deleted altogether.

In an effort to establish a basis for personal jurisdiction, Evans alleges the following:

- "HuffPost has subscribers domiciled in Mississippi and derives revenue from Mississippi based on its operations." (*Id.* ¶ 10.)

- "HuffPost, for a fee, sells premium subscriptions for its website content to Mississippi residents on either a monthly or annual basis. The sale of these premium subscriptions generates revenue and is a vital part of HuffPost's business model." (*Id.* ¶ 11.)

- "HuffPost also derives revenue from the sale of advertisements on its website, including revenue from Mississippi advertisers. Mississippi visitors to its website thereby cause an increase in advertisement revenue for HuffPost. The development and publication of its news articles, such as

2

the article made subject of this lawsuit, is an inherent part of HuffPost's business model of selling premium subscriptions to its website to Mississippi residents and further generating visitor traffic from Mississippi residents to its website, thereby increasing HuffPost's advertising revenue." (*Id.* ¶ 12.)

- "HuffPost is doing business in Mississippi and has entered into contracts with Mississippi residents to be performed in whole or in part in Mississippi, and Defendants committed a tort in whole or in part in this state." (*Id.* ¶ 13.)

These allegations do not support the exercise of personal jurisdiction over Defendants.

HuffPost operates a global online news and media platform at www.HuffPost.com, including United States and international editions. (Brand Decl. ¶ 5.) The site offers news and other original content, and covers local and international news, politics, business, entertainment, the environment, technology, popular media, lifestyle, culture, comedy, healthy living, and women's interests stories. (*Id.*)

HuffPost is a corporation organized under the laws of Delaware. It maintains its principal place of business, consisting of the business and editorial headquarters for HuffPost, in New York City. (*Id.* ¶ 3.) It is not registered to do business, and does not conduct business in Mississippi. It does not maintain an office or employees, or own real estate or bank accounts in the State. (*Id.* ¶ 4.) HuffPost does not employ journalists who specifically monitor newsworthy events in Mississippi. Although HuffPost has freelance relationships with two (2) individuals who reside in Mississippi (out of a nationwide total of 1,057 freelancers), neither individual has provided HuffPost with any material relating to Mississippi. Nor did either play any role in publication of the Article. (*Id.*)

HuffPost's website, www.HuffPost.com can be accessed anywhere in the world via an Internet connection. HuffPost does not aim any of its content specifically at Mississippi readers, and does not solicit advertisers directly targeting Mississippi residents. (*Id.* ¶ 6.)

Anyone can access content on HuffPost without charge. Readers can also, without charge, create an account with HuffPost by providing their first and last name, date of birth, and email address. Account registration provides the reader access to certain enhanced features, such as the ability to bookmark articles for future reference, but does not provide any greater access to content on the website than that available to visitors who do not register. (*Id.* ¶ 7.)

In April 2019, HuffPost implemented HuffPost Plus membership, for readers who wish to support HuffPost's journalism through ongoing financial contributions. By contributing a small amount on a monthly (or annual) basis, HuffPost Plus members receive certain exclusive benefits, including discounts on HuffPost merchandise, access to member-only newsletters, and fewer advertisements on mobile applications. HuffPost Plus members, however, have the same access to articles and other content on the website as do occasional visitors to the site or readers who register their email address with HuffPost. HuffPost Plus members are asked to provide their home address when signing up to be contributors. Of the approximately 1,000 HuffPost Plus members, two (2) members, or .19%, a tiny fraction of the total, provided a Mississippi address when signing up as regular contributors. (*Id.* ¶ 8.)

Ashley Feinberg is a journalist residing in New York. (Feinberg Decl. ¶ 2.) Currently employed by Slate Magazine, from October 2017 to May 2019, Feinberg worked as a senior reporter for HuffPost in New York. (*Id.*) During her lifetime, Feinberg – who has lived in New York since 2012 – has never had any connection to Mississippi. Feinberg has never lived, attended school, owned real estate or bank accounts, or conducted business in Mississippi.  Nor has she ever traveled to Mississippi on business or vacation. (*Id.* ¶¶ 2–3.)

For the reasons that follow, Plaintiff cannot establish a *prima facie* basis for the exercise of personal jurisdiction over Defendants.

**LEGAL STANDARD**

"'[T]he party seeking to invoke the power of the court … bears the burden of establishing jurisdiction but is required to present only *prima facie* evidence.'" *Pitts v. Ford Motor Co.*, 127 F. Supp. 3d 676, 681 (S.D. Miss. 2015) (Ozerden, J.) (citing *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012) (quotation omitted)). "In determining whether a *prima facie* case exists, this Court must accept as true [Plaintiff's] uncontroverted allegations, and resolve in [his] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *Pervasive Software, Inc.*, 688 F.3d at 219–20 (quotation omitted).

In cases arising under diversity of citizenship jurisdiction, the district court may exercise jurisdiction "to the extent permitted in a state court in the state in which the federal court sits." *Cycles, Ltd. v. W.J. Digby, Inc*., 889 F.2d 612, 616 (5th Cir. 1989). A federal court "may assert jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution." *Id*.

**ARGUMENT**

The Complaint should be dismissed pursuant to Fed R. Civ. P. 12(b)(2) because neither HuffPost nor Ashley Feinberg is subject to personal jurisdiction in Mississippi.

**I.    HUFFPOST IS NOT SUBJECT TO GENERAL JURISDICTION IN MISSISSIPPI**

General personal jurisdiction over a non-resident corporate defendant may be exercised only where the entity's operations in the forum state are "so substantial and of such a nature as to justify suit … on causes of action arising from dealings entirely distinct from those [continuous and systematic] activities." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945).

Where a corporate defendant is foreign to the forum state, the corporation's affiliation with it must be "so continuous and systematic" as to render it essentially "at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). As the Supreme Court has held, a corporation generally will be considered "at home" only in those states in which it either is incorporated or maintains its principal place of business. *Daimler AG,* 571 U.S. at 137; *see Whitener v. Pliva, Inc.*, 606 F. App'x. 762, 764–65 (5th Cir. 2015) (recognizing that it is the "exceptional case" in which "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation" subject to general jurisdiction in that state).[1]

In *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002), a case strikingly similar to this one, the Fifth Circuit affirmed the dismissal of a libel claim brought by a Texas resident against a non-resident online publisher and author after finding that general jurisdiction over the publisher was lacking.

In *Revell*, a New York-based university website owner was held not to have a sufficient presence in Texas to warrant the exercise of general jurisdiction. *Id*. at 471. The plaintiff, a Texas resident, sued for libel after a professor alleged in a post on a Columbia University website that the plaintiff had prior knowledge regarding the 1988 bombing of Pan Am Flight 103 over Scotland. The Fifth Circuit characterized the "question of general jurisdiction" as "not difficult." *Id*. Although "the maintenance of a website is, in a sense, a continuous presence everywhere in the world, the cited contacts of Columbia University with Texas were not in any way

---

[1] "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG*, 571 U.S. at 137 (quotation omitted). Feinberg is not (and never has been) domiciled in Mississippi, and therefore this Court does not have general jurisdiction over her.  Nor does Plaintiff allege that she is subject to the general jurisdiction of this Court.

'substantial.'" *Id.* Columbia University had never received more than twenty internet subscriptions to the Columbia Journalism Review from Texas residents. *Id.*

Just as in *Revell*, HuffPost does not have sufficient contacts with Mississippi to render it subject to general personal jurisdiction there. HuffPost is a Delaware corporation with its principal place of business in New York. It is not registered to do business and does not conduct business in Mississippi. HuffPost does not own real property or bank accounts, and does not have employees in Mississippi or employ journalists specifically tasked with monitoring newsworthy events in the State. Although it has relationships with two freelancers who reside in Mississippi (out of a nationwide total of 1,057), neither has provided any material relating to Mississippi or played any role in publication of the Article. In sum, HuffPost has no presence in Mississippi and certainly none that can be characterized as "continuous and systematic."

Moreover, the fact that www.HuffPost.com can be accessed anywhere in the world, including Mississippi, is an insufficient basis to support the exercise of general personal jurisdiction. HuffPost does not target Mississippi residents in connection with its articles or advertising, and only two (2) Mississippi residents, a mere .19% of the total, appear to have signed up to be HuffPost Plus members.

## II. DEFENDANTS ARE NOT SUBJECT TO SPECIFIC PERSONAL JURISDICTION IN MISSISSIPPI

In order for a court in Mississippi to exercise specific personal jurisdiction over a non-resident defendant "(1) the defendant must be amenable to service of process under the forum state's long-arm statute; and (2) the exercise of jurisdiction under the state statute must comport with the dictates of the Due Process Clause of the Fourteenth Amendment." *Brown v. BobTyler Suzuki, Inc.*, 2012 WL 293486, at *2 (S.D. Miss. Jan. 31, 2012) (citing *Clemens v. McNamee*,

615 F.3d 374, 378 (5th Cir. 2010)). Both prongs of the test must be satisfied for this Court to

exercise specific personal jurisdiction over Defendants.

The Mississippi long-arm statute provides, in pertinent part, as follows:

Any nonresident person, firm ... or any foreign or other corporation not qualified
under the Constitution and laws of this state as to doing business herein, who shall
make a contract with a resident of this state to be performed in whole or in part by
any party in this state, or who shall commit a tort in whole or in part in this state
against a resident or nonresident of this state, or who shall do any business or
perform any character of work or service in this state, shall by such act or acts be
deemed to be doing business in Mississippi and shall thereby be subjected to the
jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57 (2002).

Mississippi courts interpret the statute as authorizing "three activities" that will permit

them to exercise jurisdiction over a nonresident defendant:

(1) if that person has entered into a contract to be performed in Mississippi; (2) has
committed a tort in Mississippi; or (3) is conducting business in Mississippi.

*Dunn v. Yager*, 58 So. 3d 1171, 1184 (Miss. 2011) (quoting *Yatham v. Young*, 912 So. 2d 467,

469–70 (Miss. 2005)); *see also* Miss. Code § 13-3-57. The "three activities" are commonly

referred to as "the contract prong, the tort prong, and the doing-business prong." *ITL Int'l, Inc. v.

Constenla, S.A.*, 669 F.3d 493, 497 (5th Cir. 2012).

Plaintiff's allegations are insufficient to establish jurisdiction under the first or third

prongs of the Mississippi long-arm statute. Insofar as Plaintiff does not allege that he entered into

a contract with either Defendant, there can be no personal jurisdiction over them based on the

"contract" prong of the statute.

Moreover, in order to demonstrate personal jurisdiction under the "doing business" prong

of Mississippi's long-arm statute, a plaintiff must demonstrate that the non-resident defendant

consummated some purposeful act or transaction in Mississippi connected, or giving rise, to the

claim.  *Gross v. Chevrolet Country, Inc.*, 655 So. 2d 873, 877 (Miss. 1995) (citation omitted).
"[F]or the activities of a non-resident to satisfy the statutory 'doing business' requirement, they
must be of 'a continuing and substantial' nature." *Medina v. Medina*, 2001 WL 650466, at *1
(5th Cir. May 29, 2001) (quoting *McDaniel v. Ritter*, 556 So. 2d 303, 309 (Miss. 1989)).

As noted above, there is no evidence that HuffPost or Feinberg have conducted any sort
of activities in Mississippi, no less activities of a "continuing and substantial nature."  Moreover,
there is no evidence that either Defendant engaged in any "purposeful act or transaction" related
to the research, writing, editing or publication of the Article giving rise to Plaintiff's claim. To
the contrary, the Article was published from HuffPost's editorial headquarters in New York City
where Feinberg, the former HuffPost reporter who wrote the Article, was employed and resides.
In researching and publishing the Article, no HuffPost reporter, editor or staff member traveled
to or contacted any source residing in Mississippi. (Feinberg Decl. ¶ 6.) Indeed, at the time the
Article was published, Feinberg had no knowledge of Evans's alleged residence in Mississippi.
(*Id.*)

Accordingly, Defendants are not subject to personal jurisdiction under the "doing
business" prong of Mississippi's long-arm statute. *See, e.g., Snavely v. Nordskog Elec. Vehicles
Marketeer*, 947 F. Supp. 999, 1008–09 (S.D. Miss. 1995) (holding that "the doing business prong
of the Mississippi long-arm statute is inapplicable and does not subject the defendants to
personal jurisdiction of the Mississippi courts" based on uncontroverted affidavits showing that
defendants do not conduct and were never licensed to do business in Mississippi, and are foreign
corporations that have never maintained an office, sold their products, entered into contracts, or
sent their representatives to Mississippi.)

"'Under the tort prong of the Mississippi long-arm statute, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi.'" *Handshoe v. Torstar Corp.*, 2015 WL 8056364, at *2 (S.D. Miss. Dec. 4, 2015) (quoting *Allred v. Moore & Peterson*, 117 F.3d 278, 282 (5th Cir. 1997), *cert denied*, 522 U.S. 1048 (1998)).

*Handshoe* involved a claim by a Mississippi resident who alleged he had been libeled by "a Canadian reporter in an article published by a Canadian newspaper, targeting a Canadian audience." *Id*. On those facts, analogous to the ones here, the district court found that the first three elements of the plaintiff's defamation claim[2] were "centered around Canada, not Mississippi," and therefore those elements did not satisfy the "tort prong" of the long-arm statute. *Id*.

Because the Mississippi-resident plaintiff had alleged injury to his reputation in Mississippi and the allegation had to be accepted as true for the purposes of a Rule 12(b) motion, the court concluded that the long-arm statute, as interpreted by Mississippi's Supreme Court, gave Mississippi courts authority to adjudicate the claim. *Id*.[3] The court in *Handshoe* nevertheless went on to dismiss the action on the ground that any exercise of jurisdiction would have been improper under the Due Process Clause. *Id*. at **2–4.

---

[2] Under Mississippi law, a claim of defamation has "four elements: (1) a false and defamatory statement concerning plaintiff; (2) unprivileged publication to third party; (3) fault amounting at least to negligence on part of publisher; (4) and either actionability of statement irrespective of special harm or existence of special harm caused by publication." *Id*. (citing *Franklin v. Thompson*, 722 So. 2d 688, 692 (Miss. 1998)).

[3] There is authority for the proposition that where a defamation plaintiff alleges injury to his reputation in Mississippi, the "tort prong" of the long-arm statute is satisfied. *Internet Doorway, Inc. v. Parks*, 138 F. Supp. 2d 773, 776–77 (S.D. Miss. 2001) (citing *Allred*, 117 F.3d at 282); *see Pitts*, 127 F. Supp. 3d at 682 (discussing *Allred*). *Allred* in turn relied on the Mississippi Supreme Court's decision in *Smith v. Temco*, 252 So. 2d 212, 216 (Miss. 1971), which held that "if the injury occurs in this State," then the tort "is committed, at least in part, in this State, and personam jurisdiction of the nonresident tortfeasor is conferred upon the Mississippi court."

Here, Plaintiff alleges that he is "from" Mississippi, is currently a resident of the State, and suffered "injury" in Mississippi, but nowhere in his Complaint does he affirmatively allege that he was a Mississippi resident at the time of publication, i.e., on September 20, 2018. In all events, even assuming Plaintiff has adequately alleged injury in Mississippi sufficient to bring his defamation claim against Defendants within the scope of the State's long-arm statute, which remains subject to proof, his claim should still be dismissed because, as in *Handshoe*, subjecting Defendants to personal jurisdiction in Mississippi under the facts alleged in this case would not comport with the Due Process Clause of the U.S. Constitution.

## III. EXERCISING PERSONAL JURISDICTION OVER DEFENDANTS WOULD VIOLATE THE DUE PROCESS CLAUSE

Even if a state's long-arm statute "encompasses the defendant's activity for purposes of the suit, the plaintiff must also ensure that the state's exercise of personal jurisdiction over the defendant would be permissible under the Fourteenth Amendment." *Tellus Operating Grp., L.L.C. v. R & D Pipe Co.*, 377 F. Supp. 2d 604, 607 (S.D. Miss. 2005). The long-settled standard is that a plaintiff must show a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (quotation and citations omitted).

Specific personal jurisdiction is claim-specific, and the Court may only exercise its jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984); *Revell*, 317 F.3d at 472 ("For specific jurisdiction we look only to the contact out of which the cause of action arises.").

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a non-resident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283

(2014). A non-resident defendant's "physical presence within the territorial jurisdiction of a court is not required." *Pitts*, 127 F. Supp. 3d at 682. However, it is the non-resident defendant's contacts with the forum state that matter, not the plaintiff's connection to the forum. *Walden*, 571 U.S. at 284–86. The jurisdictional contacts must be ones that "the defendant himself creates with the forum state." *Id*. at 285 (citation omitted).  The plaintiff "cannot be the only link between the defendant and the forum." *Id.*

As *Walden* makes clear, injury to a plaintiff while resident in the forum state is not a sufficient basis to exercise personal jurisdiction over a non-resident:

> [M]ere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether *the defendant's conduct connects him to the forum in a meaningful way*.

*Id.* at 290 (emphasis supplied); *see Pitts*, 127 F. Supp. 3d at 685 (same).

## A.      HuffPost.com's Passive Website Cannot Be a Basis to Exercise Personal Jurisdiction over Defendants

When considering the exercise of jurisdiction based on a defendant's online presence, the Fifth Circuit has "drawn upon" the "sliding scale" analysis laid out in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).[4]

Under *Zippo,* Internet use is categorized within a spectrum based on the level of interactivity of the defendant's website. At one end of the spectrum are those situations where a defendant does business over the Internet by entering into contracts with residents of other states, *i.e.*, activity that "involve[s] the knowing and repeated transmission of computer files over the

---

[4] *Revell*, 317 F.3d at 470 ("This circuit has drawn upon the approach of [*Zippo*] in determining whether the operation of an internet site can support the minimum contacts necessary for the exercise of personal jurisdiction.").

Internet...." *Id.* at 1124. In such situations, the exercise of personal jurisdiction over the defendant is constitutionally proper. *See id.* (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996)).

At the other end of the spectrum are those situations where a defendant maintains a purely passive website that does nothing more than make information available on the Internet. *Id.* With passive websites, personal jurisdiction over the non-resident defendant is not proper. *See id.*

In the middle of the spectrum are those situations where a defendant maintains a website that allows a user to exchange information with the host computer located outside the forum state. In this middle ground scenario, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Id.* Ultimately, however, "[e]ven in the strange realm of Internet-related contacts, the standard for personal jurisdiction remains that a non-resident defendant must have purposefully availed itself of the benefits and protections of the forum's laws such that it should reasonably anticipate being haled into the forum's courts." *Applied Food Scis., Inc. v. New Star 21, Inc.*, 2009 WL 9120113, at *4 (W.D. Tex. Jan. 23, 2009).

Here, www.HuffPost.com is unquestionably a passive website, and Defendants have by no means availed themselves of the "benefits and protections" of Mississippi's laws in maintaining the site or publishing articles on it.

The HuffPost website can be accessed anywhere in the world by anyone with an Internet connection. HuffPost does not aim any of its content specifically at Mississippi readers, and does not solicit advertisers directly targeting Mississippi residents. (Brand Decl. ¶ 6.)

Readers can create an account with HuffPost by providing their first and last name, date of birth, and email address, but there is no cost or charge to do so and they are not required to provide their home address. While account registration provides the reader access to certain enhanced features, such as the ability to bookmark articles, it does not provide any greater access to content on the website than that available to visitors who do not register. (*Id.* ¶ 7.)

And although readers who wish to contribute financially to HuffPost's journalistic mission can become HuffPost Plus members, which provides certain exclusive benefits such as discounts on HuffPost merchandise, access to member-only newsletters, and fewer advertisements on mobile apps, only two (2) of approximately 1,000 HuffPost Plus members, just .19% of the total, list addresses in Mississippi. (*Id.* ¶ 8.)[5]

HuffPost readers may post comments on certain articles, and other readers are allowed to respond to the comments. HuffPost uses the services of a third-party vendor to moderate comments for abusive or other improper content, consistent with HuffPost's Terms of Use. Although its comment policies are subject to change in the future, HuffPost's reporters do not currently respond to reader comments or otherwise interact with readers leaving comments. (*Id.* ¶ 9.)

Under the *Zippo* test, HuffPost's purely passive website cannot support the exercise of specific personal jurisdiction over Defendants.

---

[5] The fact that Mississippi residents are able to become HuffPost Plus members is irrelevant to the due process analysis. Putting aside that the volume of Mississippi residents who have done so since April 2019 is negligible, the Court is required to consider only the forum state contact out of which the cause of action arose. *See Revell*, 317 F.3d at 472 ("For specific jurisdiction we look only to the contact out of which the cause of action arises—in this case the maintenance of the internet bulletin board. Since this defamation action does not arise out of the solicitation of subscriptions or applications by Columbia, those portions of the website need not be considered."). Here, the alleged cause of action arose directly out of the Article posted on www.HuffPost.com in New York. Posting of the Article had no connection to HuffPost Plus membership.

**B.**     **Under the *Calder* "Effects" Test, the Article Cannot Be a Basis to Exercise Personal Jurisdiction over Defendants Because It Was Not "Aimed" at Mississippi.**

Where the plaintiff alleges specific jurisdiction in a libel action, due process requires either (1) a publication with adequate circulation in the state, *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–74 (1984) (regular circulation of thousands of magazines every month), or (2) an author or publisher who "aims" a story at the state knowing that the "effects" of the story will be felt there. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984). HuffPost publishes only online, so it has no circulation in Mississippi as would a traditional newspaper or magazine. Thus, the Court must turn to *Calder*'s "effects" test.

In *Revell* the Fifth Circuit interpreted *Calder* to require a libel plaintiff to demonstrate that both (1) the subject matter of and (2) the sources relied upon for the article were in the forum state. *Revell*, 317 F.3d at 474 & n.48. *See also Fielding v. Hubert Burda Media, Inc.,* 415 F.3d 419, 426 (5th Cir. 2005).

 Although "knowledge of the particular forum in which a potential plaintiff will bear the brunt of the harm forms an essential part of the *Calder* test…." *Revell*, 317 F.3d at 475, the "plaintiff's mere residence in the forum state is not sufficient to show that the defendant had knowledge that effects would be felt there; a 'more direct aim is required.'" *Fielding*, 415 F.3d at 427 (quoting *Revell,* 317 F.3d at 476). Because in *Revell* there was insufficient evidence connecting Columbia University's publication of the allegedly defamatory article to Texas, specific personal jurisdiction over it (and the article's author) was found to be lacking.

The Fifth Circuit's decision in *Clemens* also supports dismissal here. In that case, a former professional baseball player brought a defamation action in Texas state court against his former trainer, arising from allegedly false statements the trainer made about the player's use of steroids. *Clemens*, 615 F.3d at 377. The Court concluded that the defendant lacked sufficient

minimum contacts with Texas to warrant the exercise of specific personal jurisdiction. *Id.* at 379–80.

The Court's decision rested on several key facts: (1) the statements concerned non-Texas activities, namely, the delivery of performance-enhancing drugs to the former player in New York and Canada; (2) the statements were not made in Texas, nor were they directed to Texas residents any more than to residents of any state; and (3) although the plaintiff allegedly suffered harm in Texas and the defendant allegedly knew of the likelihood of such harm, that was insufficient to make a *prima facie* showing that Texas was the focal point of the statements. *Id.* at 380; *see Fielding,* 415 F.3d at 426 (declining to exercise personal jurisdiction where "[t]he clear focus of the ... article[ ] was the alleged affair between [the Ambassador] and [his alleged mistress] and its aftermath, activities which occurred in Germany and Switzerland."); *Revell,* 317 F.3d at 475 (holding that the "post to the bulletin board here was presumably directed at the entire world … certainly it was not directed specifically at Texas, which has no special relationship to the Pan Am 103 incident.").

As in *Revell, Clemens,* and *Fielding,* the Article did not refer to Mississippi and was not aimed at readers there. Moreover, the Article did not address any activity in the forum state of Mississippi, but, rather, the procurement and delivery of illegal substances to David Kennedy in Florida and his drug-induced death in that state, at a time when Evans was attending Georgetown Preparatory School in suburban Maryland.

Finally, in researching, writing, and publishing the Article neither Feinberg nor any other HuffPost staff member traveled to or contacted any source in Mississippi. (Feinberg Decl. ¶ 6.)

Under these facts, specific personal jurisdiction is lacking. *Handshoe,* 2015 WL 8056364, at *4 (declining to exercise personal jurisdiction "because the subject of the article is the

Canadian lawsuit, the targeted audience was Canadian readers, and no Mississippi sources other than Plaintiff himself were used, [so] the Court finds that the focal point of the article was Canada, not Mississippi"); *Revell*, 317 F.3d at 473, 475 (declining to find "minimum contacts" where the article contained no reference to Texas, the article was not specifically directed at Texas readers, and the professor did not know that the plaintiff was a resident of Texas at the time the article was written and published); *Young v. New Haven Advocate,* 315 F.3d 256, 263 (4th Cir. 2002) ("The newspapers must, through the Internet postings, manifest an intent to *target* and *focus* on Virginia readers.") (emphasis supplied).

Insofar as the Article was not aimed at readers in Mississippi, contained no reference to Mississippi, and Defendants did not travel to or contact sources in Mississippi in writing and publishing it, the "minimum contacts" needed to support the exercise of specific personal jurisdiction are not present. Exercise of personal jurisdiction would be particularly improper since the author of the Article was not even aware of Evans's alleged residence at the time of publication. (Feinberg Decl. ¶ 6.) *See Revell*, 317 F.3d at 473, 475 (declining to find defendant had sufficient "minimum contacts" with Texas where he did not know the plaintiff was a resident of Texas at the time the article was written and published).

Finally, although Evans claims to have suffered injury in Mississippi, for purposes of the Due Process Clause analysis that allegation, standing alone, is insufficient to make a *prima facie* showing that Mississippi was the focal point of the allegedly defamatory statement. *Walden*, 571 U.S. at 278 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether *the defendant's conduct connects him to the forum in a meaningful way*.") (emphasis supplied). In this case, personal jurisdiction is absent because there is no connection at all – no less a "meaningful" one – between Defendants' conduct and the State of Mississippi.

## IV.    PLAINTIFF'S PUNITIVE DAMAGES CLAIM MUST ALSO BE DISMISSED

Finally, because punitive damages are a remedy, "not an independent cause of action," Plaintiff's second claim for punitive damages (Count II) fails as a matter of law and should be dismissed. *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 674 (S.D. Miss. 2007); *see Adams v. Energizer Holdings, Inc.*, 2013 WL 1791373, at *4 (S.D. Miss. Apr. 19, 2013) (same); *Kaplan v. Harco Nat. Ins. Co.*, 716 So.2d 673, 680 (Miss. Ct. App. 1998) ("[P]unitive damages are a remedy, not a cause of action.").

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and dismiss this action for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2).

Dated:  October 16, 2019

Respectfully Submitted,

*s/ Michael J. Bentley*
W. Wayne Drinkwater
wdrinkwater@bradley.com
Michael J. Bentley
mbentley@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
Suite 1000, One Jackson Place
188 East Capitol Street
Post Office Box 1789
Jackson, MS 39215-1789
Telephone: (601) 948-8000

Joseph J. Saltarelli (Pro Hac Vice Pending)
jsaltarelli@HunonAK.com
Sherli Furst (Pro Hac Vice Pending)
sfurst@HuntonAK.com
Silvia Ostrower (Pro Hac Vice Pending)
sostrower@HuntonAK.com
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166-0005
Telephone: (212) 309-1000
Facsimile: (212) 309-1100

Ann Marie Mortimer (Pro Hac Vice Pending)
amortimer@HuntonAK.com
HUNTON ANDREWS KURTH LLP
550 South Hope Street, Suite 2000
Los Angeles, CA 90071-2627
Telephone: (213) 532-2000

*Attorneys for Defendants TheHuffingtonPost.com,
Inc. and Ashley Feinberg*

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on October 16, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

                                      s/ Michael J. Bentley
                                      Michael J. Bentley