UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **DERRICK EVANS,** | Case No. 1:19-cv-536-HSO-JCG |
| Plaintiff, | |
| v. | |
| **THE HUFFINGTON POST.COM, INC.** and **ASHLEY FEINBERG,** | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY, TO DENY WITHOUT PREJUDICE DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR, IN THE ALTERNATIVE, TO STAY PLAINTIFF'S DEADLINE TO RESPOND**

Plaintiff Derrick Evans submits this memorandum in support of his Motion for Jurisdictional Discovery, to Deny Without Prejudice Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Dkt. #8], or, in the Alternative, to Stay Plaintiff's Deadline to Respond ("Motion for Jurisdictional Discovery").

### I.     INTRODUCTION AND FACTUAL BACKGROUND

On August 21, 2019 Plaintiff Derrick Evans ("Evans") filed this libel lawsuit against The Huffington Post.Com, Inc. ("Huffington Post") and its former reporter Ashley Feinberg ("Feinberg") (collectively, "Defendants") in this Court. [Dkt. #1]. The lawsuit stems from a September 20, 2018 defamatory article, which was written by Huffington Post's then reporter Feinberg, and published by Huffington Post on its website during the midst of the confirmation hearings of current United States Supreme Court Justice Brett Kavanaugh. *Id.* at p. 4, ¶ 9

Evans alleges that he is a resident of Gulfport, Mississippi and that Defendants are not residents of Mississippi and that this Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000.00. *Id*. at p. 4, ¶ 9. Evans further alleges that Huffington Post operates a website that is a "global online news and media platform" at the domain www.huffpost.com, that it has subscribers domiciled in Mississippi, and that it derives revenue from Mississippi based on those operations. He further alleges that Huffington Post, for a fee, sells premium subscriptions for its website content to Mississippi residents on either a monthly or annual basis thereby generating revenue. *Id*. at pp. 4-5, ¶¶ 4, 10-11. Evans alleges Huffington Post sells advertisements on its website and that it derives revenue from Mississippi advertisers specifically. *Id*. at p. 5, ¶ 12.

On October 16, 2019 Defendants filed their Motion to Dismiss for Lack of Personal Jurisdiction [Dkt. #8] and accompanying Memorandum Brief in support thereof. [Dkt. #9]. Defendants rely on factual assertions made by Feinberg in one declaration, [Dkt. #8-2], and by Victor Brand, the Deputy Managing Editor of Huffington Post in another. [Dkt. #8-1]. Defendants claim that this Court cannot exercise personal jurisdiction over them under Mississippi's Long Arm Statute and even if it could, that exercise would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See e.g.*, [Dkt. #9], at p. 1.

Evans believes that there is information and documentation within Defendants' possession, custody, or control that would so demonstrate, and that limited jurisdictional discovery is warranted. To that end, on October 22, 2019 Evans's counsel conferred with Huffington Post's counsel and asked if Defendants would be amenable to an abbreviated schedule for Evans to conduct limited jurisdictional discovery. Specifically, Evans's counsel proposed that Defendants agree to the following schedule with stated limitations:

- Evans would serve written discovery requests following the entry of an agreed order, which would allow written discovery to consist of not more than twenty (20) each of interrogatories, requests for production, and requests for admission, which would be narrowly tailored to elicit facts relevant to the issues raised in Defendants' Motion.

- Defendants would have twenty-one (21) days (negotiable) within which to serve their responses.

- Evans would then have the option to take one Rule 30(b)(6) deposition limited to jurisdictional facts.

Defendants would not accept Evans's proposal of limited jurisdictional discovery unless Evans produced the actual set of written discovery that would be served on Defendants beforehand. Rather than undertake the time and expense of drafting written jurisdictional discovery without any sort of agreement from Defendants that they would participate in jurisdictional discovery, Evans now files the instant motion.

## II.   ARGUMENT

### a. Evans has a demonstrable need for jurisdictional discovery to respond to factual assertions raised by Defendants in their Motion to Dismiss.

At this preliminary stage, Evans is not required to "establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). "[U]ncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *D.J. Invs. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985).

In cases like this one, however, "[w]hen the defendant disputes the factual bases for jurisdiction…, the court may receive interrogatories, depositions, or 'any combination of the recognized methods of discovery' to help it resolve the jurisdictional issue." *Walk Haydel &*

3

*Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (citation omitted). "Additionally, where a defendant raises factual issues in a motion to dismiss for lack of personal jurisdiction, a plaintiff may oppose the motion by seeking personal jurisdiction-related discovery." *Ware v. Sailun Co.*, 2017 WL 782899, at *8 (N.D. Miss. Feb. 13, 2017) (citing *Kelly v. Syria Shell Petro. Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)).

This Court has discretion in matters of discovery, including jurisdictional discovery. *Walk Haydel*, 517 F.3d at 241. Here, Evans needs to satisfy only a "minimum standard" by making a preliminary showing of jurisdiction and identifying evidence he is likely to discover that would call into question the alleged lack of personal jurisdiction. *Ware*, 2017 WL 782899, at *9 (citation omitted); *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). Simply put, if Evans presents "factual allegations that suggest with reasonable particularity *the possible existence of* the requisite contacts…the plaintiff's right to conduct jurisdictional discovery should be sustained.'" *Id*. at 429 (internal quotation marks and citation omitted).

> **i. Evans is entitled to jurisdictional discovery because there exists "the possible existence of the requisite contacts" to establish personal jurisdiction.**

Evans asserts in his Complaint numerous particularized factual allegations establishing personal jurisdiction over Defendants. These are summarized below:

- Huffington Post operates a global online news and media platform at www.huffpost.com and publicly proclaims that its website has over one million active users a month. [Dkt. #1], at p. 4, ¶ 4.

- Huffington Post has subscribers domiciled in Mississippi and derives revenue from Mississippi based on its operations. *Id*. at p. 4, ¶ 4.

- Huffington Post sells premium subscriptions for its website content to Mississippi residents on either a monthly or annual basis and the sale of those subscriptions generates revenue and is a vital part of its business model. *Id*. at p. 5, ¶ 11.

- Huffington Post derives from sale of advertisements on its website, including revenue from Mississippi advertisers and the visits of Mississippi residents cause an increase in advertising revenue for Huffington Post. *Id*. at p. 5, ¶ 12. The development and publication of its news articles, such as the article made the subject of this lawsuit, is an inherent part of Huffington Post's business model of selling premium subscriptions to Mississippi residents and further generating visitor traffic from Mississippi residents to its website. *Id*.

- Huffington Post is doing business in Mississippi and has entered into contracts with Mississippi residents to be performed in whole or in part in Mississippi, and Defendants committed a tort in whole or in part in this state. *Id*. at p. 5, ¶ 13.

Evans can also make a preliminary showing that Huffington Post's contacts with Mississippi are sufficient to satisfy both Mississippi's Long Arm Statute and the requirement that the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. Consistent with the Fifth Circuit's adoption of the *Zippo* sliding scale in *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999), Evans will be able to show that Huffington Post maintains an active website where it conducts business over the internet in Mississippi. For example:

- The website allows users to comment on articles posted on the website by signing into the users' Facebook or Twitter accounts. *See* Comment Login, Exhibit "A" to this Motion.

- Huffington Post allows users to "join" the website as a free member through its app on iPhones or Android phones or through its website. *See* Member Signup, Exhibit "B" to this Motion, at p. 3. As a free member, users are allowed to save articles and create reading lists on the website. *Id*. Free members must provide first and last names, a current email address, and birth dates. *See* Free Member Signup Page, Exhibit "C" to this Motion. Free members can add preferred topics of Huffington Post stories or articles they wish to view on the website. Ex. B, at p. 3.

- Huffington Post offers to sell website visitors premium memberships on an annual or monthly basis. *Id*. The premium memberships offer users of the Huffington Post app and usage of the website the ability to avoid advertisements. *Id*. It also provides premium members "access to exclusive newsletters" that are sent directly to those users' emails. *Id*.

- The premium memberships to www.huffpost.com grant premium members discounts on Huffington Post merchandise sold through Huffington Post's separate domain www.huffpoststuff.com, which is managed by a commerce partner StackCommerce. *Id*.; *see* HuffPost Stuff Main Website and Miscellaneous Items for Sale, Exhibit "D" to this Motion. Not only does Huffington Post sell Huffington Post merchandise but it offers for sale other miscellaneous products at significant discounts. Ex. D. Huffington Post sends email newsletters to those who become a member (both free and premium) of their website.

5

- Regardless of whether Huffington Post users sign up for a free membership or purchase a premium membership, they are required to agree to a terms of service drafted by Verizon Media (formerly Oath, Inc.), a parent corporation of Huffington Post that is registered to do business in Mississippi.  *See* Terms of Service, Exhibit "E" to this Motion.  *See also* Ex. B, at p. 3.  Those terms of service constitute a contract between Huffington Post and the free/premium members of its website.  Among other things, the terms of service require the users to agree that they are permitted to utilize their membership rights and access membership services in exchange for:

    - Indemnifying Huffington Post from any claim arising from or related to the use of the website or violation of the terms of service.  Ex. E, at p. 2, § 2.b.

    - Granting Huffington Post a worldwide, royalty-free, non-exclusive, perpetual, irrevocable, transferable, sublicensable license to, *inter alia*, use, host, store, reproduce content when that user uploads, shares, or submits content on the website.  *Id.* at p. 8, § 6.a.

    - Waiving Huffington Post's liability for any damages, including exemplary or punitive, in connection with the users' use of Huffington Post's services.  *Id.* at pp. 10-11, § 9.  The users agree to a damage limitation that states that Huffington Post is not liable in any disputes arising out of the users' use of Huffington Post's services for any amount greater than the amount the user actually pays for those services.  *Id.*

    - If a United States user, agreeing to arbitrate any and all disputes in any way arising out of or relating to the services on an individual basis or in a small claims court.  *Id.* at pp. 19-20, § 14.2.b.  The users agree to waive their right to bring a class action lawsuit and waive their right to a jury trial on any claim against Huffington Post.  *Id.* at pp. 19-23, §§ 14.2.b-d.  The terms of service also include a choice of law provision for any claims against Huffington Post.  *Id.* at pp. 23-24, § 14.2.e.

For purchasers of Huffington Post's premium subscription, they agree that they are of age to enter into a legal agreement and that in the event Huffington Post must sue or collect a remaining balance on monies owed to it, the purchasers are responsible for attorney and collection fees.  *Id.* at pp. 12-13, §§ 11.b.ii, p. 15, 11.b.xi.

In addition to the above interactivity of Huffington Post's domain www.huffpost.com, the Huffington Post specifically targets ads at Mississippi residents.  Mississippi residents visiting the website are faced with a torrent of ads that are tailored to Mississippi residents.  Huffington Post's

privacy policy suggests these ads effectively target because they utilize the information the users provide to Huffington Post.  *See* Privacy Policy Excerpt, Exhibit "F" to this Motion, at p. 1.  The ads target by using the historical searches the user has conducted on the internet, the user's other activity on the internet, the user's demographic data, and the user's location information, among other things.  *Id*.  For example, Mississippi residents receive targeted advertisements that would be of no interest to anyone but a Mississippi resident.[1]  *See* Mississippi Targeted Ads, Exhibit "M" to this Motion.

Huffington Post routinely publishes Mississippi-centric stories targeting Mississippi readers, ranging from Mississippi statewide elections to Mississippi local news stories.[2]  *See* Collection of Mississippi Articles, Exhibit "H" to this Motion.  In fact, Huffington Post, itself, has published a story about Evans on its blog, written by a Huffington Post contributor Frances Beinecke, former president of the Natural Resources Defense Council.  *See* Huffington Post Article on Derrick Evans, Exhibit "I" to this Motion.  That story covered Evans's advocacy on the Mississippi Gulf Coast (specifically, Biloxi, Mississippi) following the BP oil spill in 2010.  *Id*.  At least one Huffington Post reporter, in the past, has reached out to Evans about publishing a story on him regarding his efforts in founding Turkey Creek Community Initiatives, the Mississippi nonprofit that has a focus on reversing cultural erosion, wetlands destruction, and government neglect in the Turkey Creek, Mississippi community.[3]  *See* Derrick Evans Email

---

[1] Huffington Post allows its users to control how advertisements are provided to them by opting out of personalized advertising (which is the default).  *See* Privacy Dashboard, Exhibit "G" to this Motion, at p. 1.

[2] The attached articles are only a selection of dozens of Mississippi-centric articles published within the last six months.  A full assortment of those articles can be found by visiting the domain www.huffpost.com/topic/Mississippi.  Not surprisingly, Mississippi-centric articles themselves will have advertisements targeting Mississippi readers.  Ex. H, at p. 1.

Exchange with Huffington Post Reporter, Exhibit "J" to the Motion. More recently, just one day following the filing of Defendants' motion to dismiss for lack of personal jurisdiction, Huffington Post reporter Ja'han Jones was on site in Mississippi traversing the State for the revelation of a new, bulletproof Emmett Till memorial on the banks of the Tallahatchie River, in Tallahatchie County, Mississippi. *See* Huffington Post Reporter Ja'han Jones Tweets, Exhibit "K" to the Motion. His visit culminated with a story published about the memorial on the Huffington Post website.[4] *See* Ja'han Jones Emmitt Till Memorial Story, Exhibit "L" to the Motion.

At a minimum, Evans has demonstrated the "possible existence" of personal jurisdiction over Huffington Post. For one thing, Huffington Post has advertised premium subscriptions for sale in Mississippi, told Mississippi visitors to its website where to purchase them, and distributed those services here for purchase. This is sufficient for personal jurisdiction because the Fifth Circuit has held that "[w]here a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) (citing *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 199–200 (5th Cir. 1980)).

Most importantly though, Huffington Post maintains a highly interactive website, because: (1) free users can sign up with Huffington Post in order to access special features of the Huffington Post website and enter into a contract (its Terms of Service) with Huffington Post in exchange for that special access; (2) paid users can sign up for a premium subscription, on an annual or monthly

---

[3] This potentially explains why the author of the defamatory article, Feinberg, is able to declare that she had no knowledge of where Evans resided, [Dkt. #8-2], at ¶ 6, but that Huffington Post's Deputy Managing Editor makes no such concession.

[4] A visit to the Huffington Post's domain www.huffpost.com/topic/Mississippi reveals that the website maintains a "Mississippi" topic wherein visitors can access Mississippi-centric stories about the State and its residents.

basis, for even more features that grant them even more perks than those available to free users and enter into a contract (its Terms of Service) with Huffington Post in exchange for that even greater access; (3) it is possible to purchase Huffington Post branded products and other non-Huffington Post branded products through Huffington Post's affiliate website www.huffpoststuff.com for delivery into Mississippi; (4) the main website allows Mississippi customers to communicate directly with Huffington Post; and (5) the main website targets Mississippi visitors with Mississippi-centric stories that, in turn, work in conjunction with the advertisements that specifically target Mississippi residents. In the Fifth Circuit, "personal jurisdiction is proper" over a defendant that "clearly does business over the Internet by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the Internet.'"[5] *Mink*, 190 F.3d at 336 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)) (holding that exercise of personal jurisdiction for websites should be determined by evaluating the "level of interactivity and commercial nature of the exchange of information that occurs on the Website").

---

[5] Defendants cite *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002), a general personal jurisdiction case, for the proposition that neither defendant is subject to general personal jurisdiction in Mississippi. It is unlikely that either Defendant will be subject to general personal jurisdiction in Mississippi, which is a high burden for a plaintiff to meet. Specific personal jurisdiction is an entirely different question. Defendants' citation of the Fifth Circuit's opinions in *Fielding v. Hubert Burda Media, Inc.,* 415 F.3d 419, 426 (5th Cir. 2005), and *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010), will not control this Court's ultimate due process analysis. Both of those cases analyzed specific personal jurisdiction under the *Calder* effects-based test. In both of those cases, the defamation plaintiffs alleged that specific personal jurisdiction was proper solely because the effects of the defamations were felt in Texas. Here, Plaintiff does not allege that the effects of the defamatory article are what make personal jurisdiction over Huffington Post proper. Rather, it is the fact Huffington Post conducts business in Mississippi and that there is a nexus between that business and the publication of the article that defamed Evans, which establishes that this Court may exercise specific personal jurisdiction over Huffington Post.

Evans has set forth the minimal showing necessary for jurisdictional discovery. Consistent with the Fifth Circuit's guidance in *Fielding*, and Evans's "right to conduct jurisdictional discovery should be sustained." 415 F.3d at 429.

### ii. Evans has identified evidence he is likely to discover that would call into question Defendants' assertions of lack of personal jurisdiction.

Huffington Post asserts that there is a lack of personal jurisdiction over it in Mississippi. Huffington Post claims, through the declaration of its Deputy Managing Editor Victor Brand, that it "does not conduct business in Mississippi." *See* [Dkt. #8-1], at p. 2, ¶ 4. What Evans has presented above certainly calls into question the accuracy of Brand's conclusion. Huffington Post asserts that it does not "employ journalists who specifically monitor newsworthy events in Mississippi," but concedes that it has two freelance contributors who are Mississippi residents who do not provide material relating to the State. [Dkt. #8-1], at p. 2, ¶ 4. Nevertheless, Evans has produced evidence that Huffington Post frequently posts stories that are Mississippi-centric[6] and are of, arguably, minimal importance to anyone outside of the State. Just a few days ago, Huffington Post placed a reporter onsite in Mississippi to report a story about the installation of a new historical marker on the Tallahatchie River. Ex. K; Ex. L. Huffington Post has previously published a story about Evans himself and, in the past has reached out to Evans about publishing an article on his efforts to improve his small Mississippi hometown of Turkey Creek. Ex. I. What Evans has presented certainly calls into question Brand's conclusion that Huffington Post "does not aim any of its content specifically at Mississippi readers." [Dkt. #8-1], at p. 2, ¶ 6.

Beyond this, Huffington Post asserts that it "does not solicit advertisers directly targeting Mississippi readers." *Id*. at p. 2, ¶ 6. However, what Evans has produced clearly shows that

---

[6] It appears that these Mississippi-centric stories are written not by Huffington Post's freelance contributors, but by their paid reporters.

Huffington Post uses its Mississippi readers' geographic locations to tailor advertisements that might appeal to them for no other reason that than they live in Mississippi. Ex. F; Ex. G. This includes advertisements by candidates for Mississippi statewide political races and by Mississippi telecommunications and energy providers. Ex. M. Perhaps Brand meant that Huffington Post *does* have advertisers that directly target Mississippi readers but that it is not Huffington Post who directly solicits those advertisers.

Huffington Post concedes that its readers can sign up on their website for certain enhanced features, but it claims that such enhanced features do not provide "any greater access to content on the website than that available to visitors who do not register." *Id*. at p. 2, ¶ 7. This ignores the salient fact that Huffington Post contracts with those users in a bargained-for exchange that requires users to give up certain legal rights in exchange for the Huffington Post providing those enhanced features. *See* Ex. E. Huffington Post also concedes that, four months prior to the filing of this lawsuit, it began selling premium memberships to its website through its HuffPost Plus membership "for readers who wish to support HuffPost's journalism through ongoing financial contributions." [Dkt. #8-1], at p. 2, ¶ 8. Although Huffington Post characterizes those sales as "contributions" (as if Huffington Post is not a for-profit corporation), those sales require that purchasers enter into the same contract that free users enter into. Ex. B, at p. 3; Ex. E.

Huffington Post also concedes that it has sold premium memberships to Mississippi residents but claims that of the approximately 1,000 members on its website, only two (2) "provided a Mississippi address when signing up as regular contributors." [Dkt. #8-1], at p. 3, ¶ 8. Brand's declaration states that "HuffPost Plus members are asked to provide their home address when signing up to be contributors . . .". *Id*. at p. 3, ¶ 8. However, it is not at all clear that every purchaser of a premium subscription is required to give a home address and if every purchaser of

a premium subscription must "sign[] up to be a contributor[]" on the Huffington Post's website. *See id*. at p. 3, ¶ 9. More importantly, Huffington Post has presented Brand's information for the first time in a declaration attached to Defendants' Motion to Dismiss, and Evans has not yet had an opportunity to controvert or test those contentions. Evans requires discovery in order to challenge those factual assertions.

The limited jurisdictional discovery Evans seeks will include the following topics: (1) operation of the huffpost.com and huffpoststuff.com domain names and websites; (2) the interactivity of Huffington Post's websites, including free user registrations, sales of premium users subscriptions, and sales of Huffington Post merchandise and non-Huffington Post merchandise through their websites; (3) Huffington Post's revenue from Mississippi-based advertisers; (4) advertising that targets Mississippi residents; (5) Huffington Post's relationship with Mississippi, including any other contacts with the State and its residents; and (6) Huffington Post's relationships with reporters or freelance contributors who have resided in Mississippi within the last several years. Evans intends to serve written discovery on Huffington Post, including interrogatories, document requests, and requests for admissions not to exceed those allowable under the Federal Rules of Civil Procedure.[7] Evans also intends to take at least one deposition of Huffington Post pursuant to Fed. R. Civ. P. 30(b)(6) to allow him to obtain jurisdictionally relevant testimony from the corporate defendant.

Evans will need to establish that specific personal jurisdiction is proper over Huffington Post under Mississippi's Long Arm statute because it has: (1) entered into a contract to be performed in Mississippi; (2) has committed a tort in Mississippi; or (3) is conducting business in

---

[7] Evans requests that any order granting jurisdictional discovery make clear that the restriction on the numbers of written discovery by the applicable portions of the Fed. R. Civ. P. be rest should this matter proceed to merits discovery.

Mississippi. *Dunn v. Yager*, 58 So. 3d 1171, 1184 (Miss. 2011) (internal quotation marks and citation omitted). Defendants essentially concede that the tort prong under Mississippi's Long Arm statute is likely satisfied given authority that says where a plaintiff in a defamation case alleges injury to his reputation in Mississippi, the tort prong is satisfied.[8] [Dkt. #9], at p. 10 n. 3.

Evans submits that jurisdictional discovery will likely lead to evidence that calls into question or contradicts Huffington Post's assertions that it does not do business in Mississippi. Evans anticipates that jurisdictional discovery will demonstrate Huffington Post is, in fact, subject to specific personal jurisdiction in Mississippi because Huffington Post has purposefully availed itself of the benefits of doing business in Mississippi and has targeted Mississippi in its business activities involving the publication of new stories on its website and that one such story is the subject matter of this lawsuit. Given the time associated with responding to written discovery, as well as the logistics of scheduling a Rule 30(b)(6) deposition and the schedules of Huffington Post and its counsel, Evans requests ninety (90) days to complete jurisdictional discovery.

> **b. The Court should deny Defendants' Motion to Dismiss without prejudice to refiling it after jurisdictional discovery, or, in the alternative, stay Evans's deadline to respond until after jurisdictional discovery closes.**

As previously noted, several district courts in the Fifth Circuit have recognized that "[w]hen jurisdiction related discovery is allowed, the proper course is to deny without prejudice

---

[8] Defendants mistakenly claim that the "doing business prong" requires that Huffington Post "consummated some purposeful act or transaction in Mississippi connected, or giving rise, to the claims." [Dkt. #9], at p. 8 (citing *Gross v. Chevrolet Country, Inc.*, 655 So. 2d 873, 877 (Miss. 1995)). However, the *Gross* decision was based on an old version of Mississippi's Long Arm statute that required a nexus between the alleged act and the business the non-resident defendant engaged in. *Gross*, 655 So. 2d at 878. After 1991, the Long Arm statute no longer requires such a nexus. *Id*. *See Joshua Properties, LLC v. D1 Sports Holdings, LLC*, 130 So. 3d 1089, 1093 (Miss. 2014) ("After the statute was amended, the 'nexus' requirement between the cause of action and the business being conducted within the state was eliminated.") (citation omitted). Nevertheless, such a nexus does exist because the publication of the defamatory article about Evans was part and parcel with the business it conducts in Mississippi (*i.e.*, the publication of articles, the targeting of advertisements at Mississippi readers, and the interactivity of its website, through free and premium memberships, in conjunction with the publication of such news articles).

the pending motion to dismiss for lack of jurisdiction." *Ware*, 2017 WL 782899, at *3 (collecting cases). This is "because discovery responses in these situations typically result in the necessity for supplemental briefing that either overlaps or contradicts earlier briefing…." *Dykes v. Maverick Motion Picture Grp., LLC*, 2009 WL 3053738, at *2 (M.D. La. Sep. 17, 2009). The most efficient route for the Court and the parties is to deny Defendants' Motion to Dismiss without prejudice to Defendants refiling it at the conclusion of jurisdictional discovery.

In the alternative, the Court should stay Evans's deadline to respond to the Motion to Dismiss. A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997) (citation omitted). Evans has demonstrated that discovery is warranted to respond to Huffington Post's factual assertions raised for the first time in its Motion to Dismiss. If the Court does not deny the Motion to Dismiss without prejudice, then the Court should at least stay Evans's deadline to respond to that Motion pending the conclusion of jurisdictional discovery to avoid the unnecessary cost and expense of supplemental or contradictory briefing.

### III.   CONCLUSION

Evans has satisfied his burden of demonstrating that he is entitled to jurisdictional discovery to controvert Huffington Post's assertions in Victor Brand's declaration. Further, Evans has demonstrated the reasons why this discovery is likely to call into question Huffington Post's claim that personal jurisdiction is lacking. This Court should grant Plaintiff's Motion for Jurisdictional Discovery and deny Defendants' Motion to Dismiss for Lack of Personal Jurisdiction without prejudice to refiling after jurisdictional discovery concludes. In the alternative, the Court should stay Plaintiff's deadline to respond pending completion of jurisdictional discovery.

This is the 28th day of October, 2019.

>DERRICK EVANS
>
>By his attorneys,
>
>*s/ Charles E. Cowan*
>John P. Sneed, Bar No. 7652
>Charles E. Cowan, Bar No. 104478
>WISE CARTER CHILD & CARAWAY, P.A.
>600 Heritage Building
>401 East Capitol Street
>Jackson, Mississippi 32901
>Telephone:  (601) 968-5500
>Email:  jps@wisecarter.com
>          cec@wisecarter.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

This is the 28th day of October 2019.

>*s/ Charles E. Cowan*
>CHARLES E. COWAN