**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

DERRICK EVANS,

                    *Plaintiff,*

          v.                              Civil Action No.: 1:19-CV-00536-HSO-JCG

THE HUFFINGTONPOST.COM, INC. and
ASHLEY FEINBERG,

                    *Defendants.*

**MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY,**
**TO DENY DEFENDANTS' MOTION TO DISMISS FOR LACK OF**
**PERSONAL JURISDICTION, OR IN THE ALTERNATIVE,**
**TO STAY PLAINTIFF'S DEADLINE TO RESPOND**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION .......................................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.      JURISDICTIONAL DISCOVERY WOULD SERVE NO VALID PURPOSE
BECAUSE SPECIFIC PERSONAL JURISDICTION IS CLEARLY LACKING ............ 2

II.     NO FACTS EXIST, HAVE BEEN IDENTIFIED, OR ARE LIKELY TO
EMERGE THROUGH DISCOVERY THAT WOULD MAKE THE EXERCISE
OF JURISDICTION OVER HUFFPOST COMPORT WITH THE MISSISSIPPI
LONG-ARM STATUTE AND THE U.S. CONSTITUTION ............................................ 4

        A.     The "Doing Business" Prong of Mississippi's Long-Arm Statute Requires
Proof of a Nexus Between a Non-Resident Defendant's Purported
Activities in the State and Plaintiff's Claim, as well as Sufficient
"Minimum Contacts" ................................................................................ 5

        B.     No Facts Exist, Have Been Identified, or Are Likely to Emerge Through
Discovery That Would Establish a Nexus Between HuffPost's Purported
Activities Directed at Mississippi and Plaintiff's Claim of Defamation ............... 7

        C.     No Facts Exist, Have Been Identified, or Are Likely to Emerge Through
Discovery that Would Establish Sufficient "Minimum Contacts" Between
HuffPost and Mississippi ......................................................................... 11

CONCLUSION ............................................................................................................. 18

i

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
 293 F.3d 707 (4th Cir. 2002) ...................................................................................12

*Arnoult v. CL Medical SARL*,
 2015 WL 5554301 (S.D. Miss. Sept. 21, 2015)......................................................4

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
 137 S. Ct. 1773 (2017)....................................................................................13, 17

*Calder v. Jones*,
 465 U.S. 783 (1984)......................................................................................5, 15

*Cameron v. Grp. Voyagers, Inc.*,
 308 F. Supp. 2d 1232 (D. Colo. 2004)...................................................................16

*Cybersell, Inc. v. Cybersell, Inc.*,
 130 F.3d 414 (9th Cir. 1997) ...............................................................................15

*Daimler AG v. Bauman*,
 134 S. Ct. 746 (2014).........................................................................................9

*Dareltech, LLC v. Xiaomi Inc.*,
 2019 WL 3287957 (S.D.N.Y. July 22, 2019) ..........................................................8

*Dunn v. Yager*,
 58 So. 3d 1171 (Miss. 2011).................................................................................4

*Fielding v. Hubert Burda Media, Inc.*,
 415 F.3d 419 (5th Cir. 2005) ...............................................................................2

*Ford v. Mentor Worldwide, LLC*,
 2 F. Supp. 3d 898 (E.D. La. 2014).........................................................................8

*Gardache v. Boyd Biloxi, LLC*,
 2019 WL 490359 (S.D. Miss. Feb. 7, 2019)...........................................................7

*Gulf Coast Bank & Trust Co. v. Designed Conveyor Sys., LLC*,
 717 F. App'x 394 (5th Cir. 2017) .......................................................................13

*Hazim v. Schiel & Denver Book Publishers*,
 647 F. App'x 455 (5th Cir. 2016) .........................................................................3

*iAccess, Inc. v. WEBcard Tech., Inc.*,
 182 F. Supp. 2d 1183 (D. Utah 2002).....................................................................8

*Inmar Rx Solutions, Inc. v. Devos, Ltd.*,
  2019 WL 4440400 (5th Cir. Sept. 16, 2019) ........................................................17

*ITL Int'l, Inc. v. Constenla, S.A.*,
  669 F.3d 493 (5th Cir. 2012) .....................................................................4, 7, 11

*Joshua Properties, LLC v. D1 Sports Holdings, LLC*,
  130 So. 3d 1089 (Miss. 2014) ...........................................................................5, 6

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
  213 F.3d 841 (5th Cir. 2000) ............................................................................6, 10

*Latshaw v. Johnston*,
  167 F.3d 208 (5th Cir. 1999) ...................................................................................4

*Lee v. Ability Ins. Co.*,
  2013 WL 2491067 (S.D. Miss. June 10, 2013) ......................................................3

*Lofton v. Turbine Design, Inc.*,
  100 F. Supp. 2d 404 (N.D. Miss. 2000) ...............................................................12

*Lott v. J.W. O'Connor & Co., Inc.*,
  991 F. Supp. 785 (N.D. Miss. 1998) ...............................................................11, 14

*McFadin v. Gerber*,
  587 F.3d 753 (5th Cir. 2009) ...........................................................................11, 13

*Mullen v. Bell Helicopter Textron, Inc.*,
  136 F. Supp. 3d 740 (S.D. Miss. 2015) ................................................................13

*Mullinix v. Thirty-Eight Street, Inc.*,
  2019 WL 4579869 (W.D. Tex. Sept. 20, 2019) ....................................................17

*NexLearn, LLC v. Allen Interactions, Inc.*,
  859 F.3d 1371 (Fed. Cir. 2017) ...........................................................................12

*Pecoraro v. Sky Ranch for Boys, Inc.*,
  340 F.3d 558 (8th Cir. 2003) ...............................................................................16

*Pervasive Software Inc. v. Lexware GmbH & Co.*,
  688 F.3d 214 (5th Cir. 2012) .....................................................................7, 11, 12

*Pitts v. Ford Motor Co.*,
  127 F. Supp. 3d 676 (S.D. Miss. 2015) ................................................................6, 7

*Progressive Cty. Mut. Ins. Co. v. The Goodyear Tire & Rubber Co.*,
  2019 WL 846056 (S.D. Miss. Feb. 21, 2019) .............................................2, 3, 10

*Revell v. Lidov*,
   317 F.3d 467 (5th Cir. 2002) ................................................................5

*Salfinger v. Fairfax Media Ltd.*,
   876 N.W.2d 160 (Wis. Ct. App. 2016) ..............................................14

*Seiferth v. Helicopteros Atuneros, Inc.*,
   472 F.3d 266 (5th Cir. 2006) ................................................................7

*Stripling v. Jordan Prod. Co., LLC*,
   234 F.3d 863 (5th Cir. 2000) ................................................................5

*Triple Up Ltd. v. Youku Tudou Inc.*,
   235 F. Supp. 3d 15 (D.D.C. 2017) ..................................................9, 14

*UMG Recordings, Inc. v. Kurbanov*,
   362 F. Supp. 3d 333 (E.D. Va. 2019) .............................................9, 13

*Walden v. Fiore*,
   571 U.S. 277 (2014)............................................................................17

*Wenche Siemer v. Learjet Acquisition Corp.*,
   966 F.2d 179 (5th Cir.1992) ...............................................................13

*Wyatt v. Kaplan*,
   686 F.2d 276 (5th Cir. 1982) ................................................................3

*Young v. New Haven Advocate*,
   315 F.3d 256 (4th Cir. 2002) .........................................................12, 15

## Other Authorities

Fed. R. Civ. P. 12(b)(2)..............................................................................18

Miss. Code Ann. § 13-3-57 (2002) ..............................................................4

The HuffingtonPost.com, Inc. ("HuffPost") and Ashley Feinberg (collectively, "Defendants") respectfully submit this Memorandum of Law in opposition to Plaintiff's Motion for Jurisdictional Discovery, to Deny Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, to Stay Plaintiff's Deadline to Respond (Dkt. 10) ("Motion").

## **INTRODUCTION**

Unable to muster any legal argument in opposition to Defendants' motion to dismiss for lack of personal jurisdiction, or even a single fact to refute Defendants' evidentiary showing, Plaintiff avoids responding to the motion altogether by seeking futile jurisdictional discovery. The request is futile because no facts exist – and Plaintiff has identified none likely to emerge through discovery – that support the critical jurisdictional element missing in this case: a nexus between Plaintiff's defamation claim and any purported contacts of either Defendant with Mississippi. Although Plaintiff has not identified facts satisfying the "doing business" prong of Mississippi's long-arm statute, even had he done so, his request for jurisdictional discovery still should be denied because he has alleged no facts, and none are likely to emerge, which establish that Plaintiff's claim arises out of, or results from any conduct of Defendants purposely directed toward Mississippi.

Plaintiff concedes this Court has no basis to exercise general personal jurisdiction over HuffPost or Feinberg.[1]  Indeed, Plaintiff neither opposes Feinberg's motion to dismiss on the merits nor contends that jurisdictional discovery will reveal any basis for this Court to exercise specific personal jurisdiction over her.  Accordingly, Feinberg's motion to dismiss for lack of personal jurisdiction should be granted outright.

---

[1] Pl's Br. (Dkt. 11) at 9 n.5 ("It is unlikely that either Defendant will be subject to general personal jurisdiction in Mississippi, which is a high burden for a plaintiff to meet.").

Plaintiff fares no better with HuffPost.  The law is settled that for this Court to exercise specific personal jurisdiction over HuffPost there must be prima facie evidence that HuffPost engaged in conduct satisfying both Mississippi's long-arm statute and the "minimum contacts" requirements of the United States Constitution.  The Fourteenth Amendment's Due Process Clause requires that, before specific personal jurisdiction can be exercised over a non-resident defendant, there must be proof that it engaged in meaningful conduct purposely directed at the forum state and, most critically, that the plaintiff's claim arises out of, or results from that conduct.

No proof of such "minimum contacts" exists in this case.  Plaintiff's Motion, supported by 176 pages of jurisdictionally irrelevant material downloaded from HuffPost's website, fails to identify a single fact likely to be developed through discovery that will support the requisite nexus between HuffPost's purported contacts with Mississippi and his claim of defamation.  The claim arises instead out of an article that was researched, written, and published in New York, and that pertains to events that took place 35 years ago in Florida and Maryland, not Mississippi.

For these reasons, the Court should deny Plaintiff's Motion for jurisdictional discovery and, insofar as he has proffered no other argument in opposition to it, grant Defendants' motion to dismiss this action for lack of personal jurisdiction.

## <u>ARGUMENT</u>

### I.   JURISDICTIONAL DISCOVERY WOULD SERVE NO VALID PURPOSE BECAUSE SPECIFIC PERSONAL JURISDICTION IS CLEARLY LACKING

A party seeking jurisdictional discovery must "first make 'a preliminary showing of jurisdiction.'"  *Progressive Cty. Mut. Ins. Co. v. The Goodyear Tire & Rubber Co.*, 2019 WL 846056, at *1 (S.D. Miss. Feb. 21, 2019) (quoting *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)).  "This showing requires factual allegations that suggest with

reasonable particularity the possible existence of the requisite facts." *Id.* (citation and quotation marks omitted).

Plaintiff has not made such a showing here. As the Fifth Circuit has explained, "'[w]hen the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted.' Discovery need not be afforded where 'the discovery sought could not have added any significant facts.'" *Hazim v. Schiel & Denver Book Publishers*, 647 F. App'x 455, 460 (5th Cir. 2016) (quoting *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982); *see also Progressive*, 2019 WL 846056, at *1; *Lee v. Ability Ins. Co.*, 2013 WL 2491067, at *4 (S.D. Miss. June 10, 2013).

Plaintiff contends that "jurisdictional discovery will demonstrate HuffPost is, in fact, subject to personal jurisdiction in Mississippi because HuffPost has purposefully availed itself of the benefits of doing business in Mississippi…." (Pl's Br. at 13.) HuffPost is not "doing business" in Mississippi but, in any event, none of its purported contacts with the State have any connection, or nexus, with Plaintiff's claim of defamation. *See* Point II *infra*. Tellingly, Plaintiff never articulates the purported factual basis for such a connection. Insofar as Plaintiff has failed to – and cannot – make a preliminary showing of jurisdiction based on HuffPost's alleged contacts with Mississippi, discovery pertaining to such purported contacts will "serve no purpose and should not be permitted."

Plaintiff also "fails to identify the relevant evidence [he] expects to uncover in discovery." *Lee*, 2013 WL 2491067, at *4 (denying request for jurisdictional discovery because plaintiff "has not identified any specific evidence that she believes discovery will uncover" and therefore "jurisdictional discovery would serve little purpose" and "would merely increase the cost of litigation for all parties"). He devotes a third of his brief to unspecified "evidence he is

likely to discover" (Pl's Br. at 10–14), and submits exhibits totaling 176 pages that allegedly support his request for jurisdictional discovery.  Yet, neither Plaintiff's brief nor his exhibits point to any fact that even remotely suggests, no less would establish, a nexus between HuffPost's purported contacts with Mississippi and Plaintiff's claim of defamation.

Plaintiff does not identify any facts he expects to emerge through jurisdictional discovery that would demonstrate his claim of defamation arises out of, or results from conduct of HuffPost purposely directed toward Mississippi.  As such, his Motion amounts to nothing more than "a fishing expedition for facts to bolster [his] speculation," and should be denied.  *Arnoult v. CL Medical SARL*, 2015 WL 5554301, at \*10 (S.D. Miss. Sept. 21, 2015).

## II.   NO FACTS EXIST, HAVE BEEN IDENTIFIED, OR ARE LIKELY TO EMERGE THROUGH DISCOVERY THAT WOULD MAKE THE EXERCISE OF JURISDICTION OVER HUFFPOST COMPORT WITH THE MISSISSIPPI LONG-ARM STATUTE AND THE U.S. CONSTITUTION

"A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution."  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).  Mississippi's long-arm statute allows for the exercise of personal jurisdiction over a non-resident who (1) enters into a contract with a Mississippi resident, (2) commits a tort outside the state causing injury within the state, or (3) is "doing business" in Mississippi.[2]  Disclaiming any reliance on the "contract" or "tort" prongs of the Mississippi's long-arm statute,[3] Plaintiff asserts jurisdiction solely under the "doing business" prong of the statute.

---

[2] Miss. Code Ann. § 13-3-57 (2002); *see Dunn v. Yager*, 58 So. 3d 1171, 1184 (Miss. 2011); *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 497 (5th Cir. 2012).

[3] Although Plaintiff asserted as part of his jurisdictional allegations that Defendants "committed a tort in whole or in part in" Mississippi and that he suffered injury in this State as a result of the alleged

A.   **The "Doing Business" Prong of Mississippi's Long-Arm Statute Requires Proof of a Nexus Between a Non-Resident Defendant's Purported Activities in the State and Plaintiff's Claim, as well as Sufficient "Minimum Contacts"**

Plaintiff speculates that discovery will enable him to demonstrate that the Court may exercise specific personal jurisdiction over HuffPost under the "doing business" prong of the Mississippi long-arm statute.  Pl's Br. at 13 ("Evans anticipates that jurisdictional discovery will demonstrate Huffington Post has purposefully availed itself of the benefits of doing business in Mississippi…").  He contends, incorrectly, that he need not establish a "nexus" between HuffPost's alleged business activities in this State and the article that gives rise to his claim of defamation, *id.* at 13 n.8, yet simultaneously – and incongruously – asserts that "there is a nexus between that business and the publication of the article that defamed Evans, which establishes that this Court may exercise specific personal jurisdiction over Huffington Post," *id.* at 9 n.5.

Citing *Joshua Properties, LLC v. D1 Sports Holdings, LLC*, 130 So. 3d 1089, 1093 (Miss. 2014) (Pl's Br. at 13 n.8), Plaintiff argues that, subsequent to the 1991 amendments to its long-arm statute, Mississippi no longer requires a plaintiff to establish a nexus between a non-resident defendant's business activities in Mississippi and his cause of action.  It is true that, unlike many states' long-arm statutes, the Mississippi long-arm statute is not co-extensive with the Due Process Clause.  *See Stripling v. Jordan Prod. Co.*, *LLC*, 234 F.3d 863, 869 n.7 (5th Cir. 2000).  But the Due Process Clause renders this a distinction without a difference.  In *Joshua Properties*, the Mississippi Supreme Court recognized that, under the state's long-arm statute,

---

defamatory article (Complaint ¶¶ 13, 15), he now disclaims his alleged injury as the basis for jurisdiction (Pl's Br. at 9 n.5) ("Plaintiff does not allege that the effects of the defamatory article are what make personal jurisdiction over Huffington Post proper").  Reading between the lines, it is clear Plaintiff is no longer relying on the "tort" prong of the long-arm statute because he cannot establish a basis for jurisdiction under the "effects" test set forth in controlling Supreme Court and Fifth Circuit precedent, *e.g.*, *Calder v. Jones*, 465 U.S. 783 (1984); *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002), cited along with other precedents in Defs.' Mem. of Law at 15–17 (Dkt. 9).

proof of both a nexus and sufficient "minimum contacts" is required as a matter of federal law.
*Joshua Props.*, 130 So. 3d at 1094 ("Finding the long-arm statute applicable to [defendant], we must now determine whether the application offends the Due Process Clause of the Fourteenth Amendment…. Specific personal jurisdiction is exercised over a nonresident *when a nexus exists between the litigation and the activities within the state*.") (emphasis added).

Thus, for this Court to exercise specific personal jurisdiction over HuffPost under the "doing business" prong of the Mississippi long-arm statute, Plaintiff must establish that (1) HuffPost is "doing business" in Mississippi, (2) a nexus exists between his claim of defamation and the purported business activities directed toward Mississippi, and that (3) HuffPost has sufficient "minimum contacts" with Mississippi "such that allowing suit within the state does not offend traditional notions of fair play and substantial justice." *Id.* (citations and internal quotation marks omitted);[4] *see Pitts v. Ford Motor Co.*, 127 F. Supp. 3d 676, 684 (S.D. Miss. 2015) (Ozerden, J.).

Plaintiff has neither alleged in the Complaint nor identified in the Motion any facts that support the assertion that his defamation claim arises out of, or results from any business activity of HuffPost within the State of Mississippi.  Nor are any facts alleged, or identified as likely to emerge through discovery, that will demonstrate that HuffPost has sufficient minimum contacts with Mississippi to warrant the exercise of personal jurisdiction over it.

---

[4] Where, as here, a plaintiff fails to make a prima facie showing of a non-resident defendant's requisite "minimum contacts" with the forum state, the court need not consider whether the exercise of jurisdiction over it would offend "traditional notions of fair play and substantial justice."  *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 n.* (5th Cir. 2000).

**B.      No Facts Exist, Have Been Identified, or Are Likely to Emerge Through Discovery That Would Establish a Nexus Between HuffPost's Purported Activities Directed at Mississippi and Plaintiff's Claim of Defamation**

The Due Process Clause "'prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts.'" *Gardache v. Boyd Biloxi, LLC*, 2019 WL 490359, at *4 (S.D. Miss. Feb. 7, 2019) (Ozerden, J.) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006)); *see Pitts*, 127 F. Supp. 3d at 685 (the constitutional "nexus" required to support specific jurisdiction consistent with the Due Process Clause is established only "when the plaintiff's cause of action 'arises out of' or is 'related to' the defendant's forum contacts") (quoting *Pervasive Software Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 221 (5th Cir. 2012)); *see also ITL Int'l, Inc.*, 669 F.3d at 500 ("the plaintiff's cause of action must arise out of or result from the defendant's forum-related contacts") (quotation and internal brackets omitted).

Plaintiff's defamation claim arises out of an article published on HuffPost's website in September 2018, the subject matter of which was the early-1980's party culture at Georgetown Preparatory School, then attended by United States Supreme Court Justice Brett Kavanaugh. The article was researched, written, edited, and published in New York, not Mississippi.  It did not target a Mississippi audience.  It described events that took place 35 years earlier in Florida and Maryland, not Mississippi.  The article's author does not reside, and in fact has never set foot in, Mississippi, and in writing the article, she did not communicate with any source residing in Mississippi.  (Feinberg Decl. ¶¶ 3–6) (Dkt. 8–2).

Plaintiff has failed to refute or even dispute any of these dispositive jurisdictional facts proffered by Feinberg, and he admits that, without jurisdictional discovery, he is unable "to controvert Huffington Post's assertions in Victor Brand's declaration."  (Pl's Br. at 14.)  He asserts that jurisdictional discovery is appropriate because "there is a nexus between [HuffPost's]

business and the publication of the article that defamed Evans" (Pl's Br. at 9 n.5), yet never articulates what is the nexus between the allegedly defamatory article and the business activities he describes. In fact, those activities have no discernible connection to Mississippi and no connection whatever to the subject matter of the article giving rise to his claim of defamation.

<u>Alleged Nexus</u>: HuffPost maintains an active website accessible from Mississippi. (Pl's Br. at 5.) The website is interactive. For instance, users may purchase HuffPost branded products through the website. (Pl's Br. at 8–9.)

<u>Lack of Nexus</u>: The fact that HuffPost maintains a website accessible by Mississippi residents (and by everyone else on Earth with an internet connection) did not give rise to the claim of defamation. Courts throughout the country agree that a defendant's maintenance of a website – even an interactive website – is not, standing alone, a sufficient basis to exercise specific personal jurisdiction. Rather, there must be a nexus between a plaintiff's direct use of the website and the allegedly injurious conduct. Otherwise, there would always be a nexus between every online publication and every jurisdiction in the United States, and the nexus requirement would be meaningless.[5]

Plaintiff's claim of defamation does not arise out of his use of the HuffPost website, nor does he allege otherwise. Moreover, his defamation claim does not arise out of, and is not

---

[5] *See, e.g., Dareltech, LLC v. Xiaomi Inc.*, 2019 WL 3287957, at *9 (S.D.N.Y. July 22, 2019) ("Plaintiff contends that the defendants' Internet activity is a potential basis for the exercise of personal jurisdiction, because it considers the defendants' website … as interactive …. There is no nexus between the allegedly infringing product itself and the defendants' website, and jurisdiction is accordingly lacking."); *Ford v. Mentor Worldwide, LLC*, 2 F. Supp. 3d 898, 905 (E.D. La. 2014) ("even concluding that the site is to some extent interactive under *Zippo,* the Court cannot find that specific jurisdiction obtains here because plaintiff's alleged injury did not arise out of her use of the website"); *iAccess, Inc. v. WEBcard Tech., Inc.*, 182 F. Supp. 2d 1183, 1189 (D. Utah 2002) ("WEBcard did maintain a website that allowed interaction with users, but mere interactivity will not support jurisdiction. Rather, iAccess must allege a nexus between WEBcard's Web site and Utah residents.").

related to any of the supposedly interactive features of HuffPost's website, including users'

ability to purchase HuffPost or third-party merchandise through HuffPostStuff.com.

Alleged Nexus: Users may post comments on articles published on HuffPost's website.
(Pl's Br. at 9.)

Lack of Nexus: Plaintiff's claim of defamation does not arise out of, and is not related to,

any comment posted on HuffPost's website.  Plaintiff does not allege otherwise.

Alleged Nexus: HuffPost targets ads at Mississippi residents.  (Pl's Br. at 6–7.)

Lack of Nexus: Like most media websites, HuffPost allows third party advertisers to

direct their ads to users located in specific geographic locations, including Mississippi.[6]  But

Plaintiff's claim of defamation does not arise out of, and is not related to, any third-party ads

posted on the HuffPost website.  Thus, there cannot be any nexus between the ads and his claim

of defamation.  *See UMG Recordings, Inc. v. Kurbanov*, 362 F. Supp. 3d 333, 339 (E.D. Va.

2019) ("The revenue from the advertisements cannot be the basis for finding a commercial

relationship with the users because they are separate interactions and the due process analysis

must only look at the acts from which the cause of action arises…"); *Triple Up Ltd. v. Youku

Tudou Inc.*, 235 F. Supp. 3d 15, 26 (D.D.C. 2017) ("The Court need not decide whether Youku's

hosting of English–language advertisements for American audiences rises to the level of

purposeful availment, however, because Triple Up's lawsuit does not 'aris[e] out of or relate[ ]

to' those third-party ads, as specific jurisdiction requires.") (quoting *Daimler AG v. Bauman*, 134

S. Ct. 746, 754 (2014)).

Alleged Nexus: HuffPost publishes stories centered around Mississippi.  (Pl's Br. at 7.)

Lack of Nexus: Plaintiff's claim of defamation does not arise out of, and is not related to

any of the Mississippi-centered articles annexed to the Motion.  None of the articles bears any

---

[6] https://developer.verizonmedia.com/dsp/api/docs/traffic/targeting/geos.html (Verizon Media)

relation to the subject matter of the allegedly defamatory article, nor does Plaintiff allege that his defamation claim arises out of, or is related to the subject matter of any of the annexed articles.

>    Alleged Nexus: HuffPost advertises premium subscriptions and makes them available to Mississippi residents.  (Pl's Br. at 8.)

>    Lack of Nexus: Plaintiff's claim of defamation does not arise out of, and is not related to, HuffPost Plus membership, to which only two Mississippi residents have subscribed.  Plaintiff does not allege that his defamation claim arises out of, or is related to the availability of HuffPost Plus membership to residents of Mississippi.

Given the complete lack of nexus between the activities of HuffPost that Plaintiff relies upon and the article that gives rise to his defamation claim, jurisdictional discovery would be futile.  Plaintiff has failed to identify a single fact likely to be revealed through discovery that would establish the requisite nexus.  *Kelly*, 213 F.3d at 855 (affirming denial of jurisdictional discovery where "*no* amount of information on [defendant's] contacts with Texas, . . . would strengthen Appellants' assertion of specific jurisdiction for [defendant], because, as stated, their claims did *not* arise from such contacts") (emphases in original); *Progressive*, 2019 WL 846056, at *3 (jurisdictional discovery denied because "[n]one of the discovery proposed by [plaintiff], or the facts alleged so far, demonstrate a meaningful connection between [plaintiff's claim] and [defendant's] Mississippi contacts").  Insofar as Plaintiff cannot point to any facts that would establish that his defamation claim arises out of, or results from any HuffPost activity purportedly directed at Mississippi, the Court need go no further in its analysis and should deny his motion for jurisdictional discovery.

C.      **No Facts Exist, Have Been Identified, or Are Likely to Emerge Through
        Discovery that Would Establish Sufficient "Minimum Contacts" Between
        HuffPost and Mississippi**

For the exercise of jurisdiction to be consistent with the Due Process clause, HuffPost

must have sufficient "minimum contacts" with Mississippi.  The analysis is essentially the same

as the one to determine whether HuffPost is "doing business" in Mississippi for purposes of the

State's long-arm statute.  *Lott v. J.W. O'Connor & Co., Inc.*, 991 F. Supp. 785, 786 n.1 (N.D.

Miss. 1998) ("Because the plaintiffs seek to establish jurisdiction under the 'doing business'

prong of the long arm statute, they must establish that the non-resident defendant had minimum

contacts with this state – an analysis which is similar to the due process analysis.").

To satisfy the minimum contacts requirement, there must be facts demonstrating "that the

defendant purposely directed its activities toward the forum state or purposely availed itself of

the privileges of conducting activities there."  *ITL Int'l Inc.*, 669 F.3d at 498 (quotation omitted).

The contacts between the non-resident defendant and the forum cannot be random, fortuitous, or

attenuated, and must precede the litigation.  *See Pervasive Software Inc.*, 688 F.3d at 221.

Further, the unilateral activity of a third party is insufficient to establish minimum contacts.  *See

McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

The Court need never reach the question whether the HuffPost activities Plaintiff relies

on amount to sufficient minimum contacts with Mississippi, given the lack of nexus between

those activities and Plaintiff's claim.  In any case, none of the 176 pages of exhibits proffered by

him even remotely supports the conclusion that HuffPost is doing business in, or has sufficient

minimum contacts with Mississippi to justify the exercise of jurisdiction or leave to engage in

jurisdictional discovery.

Exhibits A-D apparently have been proffered to show that users, including residents of

Mississippi, may log in to HuffPost's website, become HuffPost or HuffPost Plus members, and

11

purchase HuffPost merchandise.[7]  Plaintiff relies on these exhibits to support its contention that HuffPost's website is interactive.  (Pl's Br. at 5.)

Even assuming the website is interactive or semi-interactive, which HuffPost denies, maintaining such a website is not a sufficient minimum contact for purposes of the Due Process Clause.  The Fifth Circuit has explained that interactivity of a website is not in itself sufficient to prove minimum contacts.  Rather, "internet-based jurisdictional claims must continue to be evaluated on a case-by-case basis, focusing on the nature and quality of online and offline contacts to demonstrate the requisite purposeful conduct that establishes personal jurisdiction." *Pervasive Software Inc.*, 688 F.3d at 227 n.7; *see also Lofton v. Turbine Design, Inc.*, 100 F. Supp. 2d 404, 411 (N.D. Miss. 2000) (in the Fifth Circuit, it is not appropriate "to find the existence of personal jurisdiction of a nonresident defendant based solely upon the postings on his website, which is simply accessible by Mississippi residents.").  The same conclusion has been reached by courts in many other jurisdictions.[8]

Exhibit E is a copy of the Terms of Service for HuffPost (and other Verizon Media brands; *see* Ex. E at 1).  But "the relationship between [HuffPost] and the users is not based on a commercial contract. While users of [HuffPost] must agree to the Terms of Use, the [HuffPost

---

[7] As Plaintiff admits, those purchases are done through a separate website (www.huffpoststuff.com).

[8] For instance, the Fourth Circuit explained that "'a person's act of placing information on the Internet' is not sufficient by itself to '"subject[ ] that person to personal jurisdiction in each State in which the information is accessed.'" *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).  "Otherwise, a person placing information on the Internet would be subject to personal jurisdiction in every State, and the traditional due process principles governing a State's jurisdiction over persons outside of its borders would be subverted." *Id.* (quotation and citation omitted).  *See also NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1378 (Fed. Cir. 2017) ("[T]he difficulty with that specific jurisdiction theory was that [defendant's] website is not directed at customers in the [forum], but instead is available to all customers throughout the country.") (quotation omitted).

website is] free to use." *UMG Recordings, Inc.*, 362 F. Supp. 3d at 339–40 (finding that

defendant did not purposefully avail himself of the benefits and protections of the forum and, as

a result, exercise of personal jurisdiction over defendant would be unconstitutional as a violation

of due process).[9]

Further, even if the Court deemed the relationship between HuffPost and Mississippi

users to be based on a contract, that contract is insufficient to establish that Mississippi purposely

directed its activities at Mississippi.  *See McFadin*, 587 F.3d at 760 ("It is clearly established that

merely contracting with a resident of the forum state does not establish minimum contacts.")

(quotation omitted).

Exhibits F and G contain generic information provided by Verizon Media to consumers

regarding the ads they view, and a copy of the privacy dashboard where HuffPost users may

personalize the ads they see.

Plaintiff relies heavily on Exhibit M, a collection of Mississippi-related ads on HuffPost

website pages.  (Pl's Br. at 6–7.)  Plaintiff asserts that jurisdiction may exist because HuffPost

---

[9] Plaintiff notes that HuffPost's Terms of Service are issued by Verizon Media (formerly Oath Inc.), HuffPost's parent corporation, which he claims is registered to do business in Mississippi.  (Pl.'s Br. at 6.)  On July 15, 2019, long after publication of the article giving rise to Plaintiff's claim, Oath Inc., a Delaware corporation headquartered in New York City, filed an application for a Certificate of Authority to do business in Mississippi.  Of course, Oath Inc.'s application is irrelevant to the jurisdictional analysis regarding HuffPost, its subsidiary.  In all events, qualification to do business in Mississippi does not give rise to general jurisdiction, *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 181–82 (5th Cir.1992); *Mullen v. Bell Helicopter Textron, Inc.*, 136 F. Supp. 3d 740, 744 (S.D. Miss. 2015), and cannot, standing alone, support a finding of specific jurisdiction under the Mississippi long-arm statute, which requires both that the non-resident defendant is "doing business" in the State and that the claim arises out of, or results from that activity.  *See Gulf Coast Bank & Trust Co. v. Designed Conveyor Sys., LLC*, 717 F. App'x 394, 399 n.2 (5th Cir. 2017) (per curiam) (registration to do business and appointment of an agent in Louisiana are insufficient to support specific jurisdiction where "[plaintiff's] claim is wholly unrelated to [defendant's] appointment of a registered agent and previous business in the state") (citing *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1781–82 (2017)).

targets Mississippi-related ads to readers located in Mississippi, which allegedly is evidence that HuffPost purposely directs its activities to Mississippi.  The argument fails for several reasons.

First, the Mississippi-related ads in Exhibit M advertise third parties' products and are not HuffPost ads.  Selling internet advertising space to advertisers does not "subject the website to the jurisdiction of every forum in which it is accessible."  *Triple Up Ltd.*, 235 F. Supp. 3d at 28.

Second, a non-resident website operator may be subject to jurisdiction under minimum contacts analysis if it directly targets forum state residents or places ads in forum state media. *See Lott*, 991 F. Supp. at 787.  There is no proof that either occurred here.  In contrast, the mere appearance of Mississippi-related ads on the screen of internet users accessing HuffPost from Mississippi "does not establish that [HuffPost] ha[s] proactively and purposefully reached out or targeted [Mississippi] in any way…."  *Salfinger v. Fairfax Media Ltd.*, 876 N.W.2d 160, 176 (Wis. Ct. App. 2016).

In *Salfinger*, as here, plaintiffs asserted that defendant had published a defamatory article on its website and that defendant had minimum contacts with the forum state because it targeted ads at forum residents.  *Id.* at 163, 174.  The Court disagreed, finding that ads placed on the defendant's website simply based on the user's location did not establish that the defendant had taken affirmative or purposeful steps to target the forum state's users.  *Id.* at 176.  The same conclusion applies here.

In all events, third party directed advertising alone is not sufficient to establish minimum contacts for Due Process purposes.[10]  "[N]o court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state."

---

[10] That HuffPost allows third party advertisers to direct their ads to website users in specific regions or states is not at all unique; it is a common practice among media companies.  E.g., https://support.google.com/google-ads/answer/1722043?hl=en (Google) https://business.twitter.com/en/targeting/geo-and-language.html (Twitter)

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) (citation omitted).  "Rather, in each, there has been 'something more' to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state."  *Id.*

Exhibit H is a collection of articles relating to events in Mississippi (*e.g.*, the burning of Mississippi's flag, the shutdown of Mississippi's beaches, glitches in voting machines used for Mississippi GOP governor runoff, etc.).  Exhibit K is a series of tweets by a HuffPost reporter regarding the Emmet Till memorial in Mississippi.  And Exhibit L is an article published on HuffPost's website on the same topic.

The articles and tweets are of interest to a national audience, not solely Mississippi residents.[11]  The publication of stories involving events in Mississippi does not establish that HuffPost purposely targets a Mississippi audience, just as articles about events occurring in New York, for instance, do not exclusively target a New York audience.  Thus, articles concerning events in Mississippi do not establish minimum contacts between HuffPost and Mississippi for jurisdictional purposes.  *See Young*, 315 F.3d at 264 ("The newspapers did not post materials on the Internet with the manifest intent of targeting Virginia readers.  Accordingly, the newspapers could not have 'reasonably anticipate[d] being haled into court [in Virginia]....'") (quoting *Calder*, 465 U.S. at 790).

---

https://www.facebook.com/business/help/202297959811696?id=176276233019487 (Facebook)
Third party geolocational advertising in no way demonstrates that the website operator is "targeting" any state's residents or purposely availing itself of the privilege of doing business in a particular state.

[11] In a particularly misleading footnote, Plaintiff asserts that the HuffPost "website maintains a 'Mississippi' topic wherein visitors can access Mississippi-centric stories about the State and its residents."  (Pl.'s Br. at 8 n.4.)  In fact, Plaintiff is referring to a simple search engine on the website that allows readers to retrieve archived articles concerning any selected state (or newsworthy topic), e.g., https://www.huffpost.com/news/topic/alabama, https://www.huffpost.com/news/topic/kansas, https://www.huffpost.com/news/topic/vermont, https://www.huffpost.com/news/topic/wyoming, https://www.huffpost.com/news/topic/guns, https://www.huffpost.com/voices/topic/abortion.

Exhibit I is a 2011 blog post about Plaintiff's environmental work in Mississippi, published on HuffPost's private blogger platform (discontinued in January 2018[12]), and Exhibit J is a July 2011 email exchange between Plaintiff and a HuffPost editor about a potential piece on the Turkey Creek community.  Neither establishes sufficient minimum contacts between HuffPost and Mississippi.

As an initial matter, in addition to the fact that they bear no connection whatever to the article that gives rise to Plaintiff's defamation claim, the blog post and emails cannot constitute "contacts" for jurisdictional purposes because they are far too remote in time – 7 years – from the accrual of Plaintiff's claim in September 2018.  *See Pecoraro v. Sky Ranch for Boys, Inc*., 340 F.3d 558, 562 (8th Cir. 2003) ("Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit."); *Cameron v. Grp. Voyagers, Inc*., 308 F. Supp. 2d 1232, 1240 (D. Colo. 2004) (contractual relationship that ended nearly two years prior to filing of suit, and more than a year before the accident giving rise to the claim, was insufficient to establish minimum contacts necessary for personal jurisdiction).

Moreover, a single post about Plaintiff, dating from 2011, by a person on a private blogging platform then-hosted by HuffPost cannot be a basis to find minimum contacts, because the requirement can only be satisfied through *defendant's* contacts with the forum, not a third

---

[12] The HuffPost "contributor platform" was launched in May 2005 and discontinued in January 2018, at least nine months prior to publication of the article giving rise to Plaintiff's defamation claim. https://www.huffpost.com/entry/huffpost-opinion-huffpost-personal_n_5a5f6a29e4b096ecfca98edb; https://variety.com/2018/digital/news/huffington-post-ends-unpaid-contributor-blogger-program-1202668053/

party's contact with it.[13]  *See Walden v. Fiore*, 571 U.S. 277, 283–84 (2014); *Inmar Rx Solutions, Inc. v. Devos, Ltd.*, 2019 WL 4440400, at *2 (5th Cir. Sept. 16, 2019) (per curiam) ("For the exercise of specific jurisdiction to comply with due process, 'the *suit* must arise out of or relate to the defendant's contacts with the *forum*.'") (citing *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780) (emphasis in original).

Similarly, a one-off email exchange (Exhibit J) between Plaintiff and a HuffPost editor, seven years prior to publication of the allegedly defamatory article giving rise to Plaintiff's claim, hardly suggests that HuffPost was purposely availing itself of the privilege of conducting business in Mississippi at the time the claim arose.  In fact, insofar as "a few emails and texts" are not sufficient to establish minimum contacts and support specific jurisdiction in the forum state even when they relate to the claim being sued upon, *see Mullinix v. Thirty-Eight Street, Inc.*, 2019 WL 4579869 at *4 (W.D. Tex. Sept. 20, 2019), a few sporadic emails cannot possibly constitute minimum contacts when they bear no relation whatever to the plaintiff's claim.

Despite his voluminous submission, Plaintiff has failed to identify a single fact, either alleged, currently before the Court, or likely to emerge through discovery, that would support a finding that HuffPost has sufficient minimum contacts with Mississippi to support jurisdiction or that his defamation claim arises out of, results from, or is related to, any conduct HuffPost has purportedly directed toward Mississippi.  Because the lack of any basis to exercise personal jurisdiction is clear, and Plaintiff has failed to identify any facts likely to emerge through discovery that would establish a nexus between his claim and any HuffPost conduct purposely

---

[13] There is no indication from the blog post that the author, then head of the Natural Resources Defense Council, was even a resident of Mississippi at the time.  Thus, the only connection to Mississippi is the subject matter of the private post.

directed toward Mississippi, jurisdictional discovery would be a futile endeavor and leave to engage in it should be denied.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's motion for jurisdictional discovery and dismiss this action for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2).

Dated: November 12, 2019                    Respectfully Submitted,

*s/ Michael J. Bentley*
W. Wayne Drinkwater
wdrinkwater@bradley.com
Michael J. Bentley
mbentley@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
Suite 1000, One Jackson Place
188 East Capitol Street
Post Office Box 1789
Jackson, MS 39215-1789
Telephone: (601) 948-8000
Facsimile: (601) 948-3000

Joseph J. Saltarelli
jsaltarelli@HuntonAK.com
Sherli Furst
sfurst@HuntonAK.com
Silvia Ostrower
sostrower@HuntonAK.com
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166-0005
Telephone: (212) 309-1000
Facsimile: (212) 309-1100
Ann Marie Mortimer
amortimer@HuntonAK.com
HUNTON ANDREWS KURTH LLP
550 South Hope Street, Suite 2000
Los Angeles, CA 90071-2627
Telephone: (213) 532-2000

*Attorneys for Defendants The HuffingtonPost.com, Inc. and Ashley Feinberg*

18

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

s/ Michael J. Bentley
Michael J. Bentley